**FRYER & WILLIS DRILLING COMPANY et al., Appellants,**

v.

**OILWELL, DIVISION OF UNITED STATES STEEL CORPORATION, Appellee.**

No. 5078.

Court of Civil Appeals of Texas, Waco.

Oct. 21, 1971.

Rehearing Denied Nov. 18, 1971.

Griffith & Lumpkins, Waxahachie, for appellants.

Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellee.

## OPINION

HALL, Justice.

The appellants are R. J. Fryer and Fryer And Willis Drilling Company. Fryer is president of the drilling company. In the early part of 1968, Fryer began negotiating with the appellee, Oilwell, for an extension of credit by Oilwell to the drilling company.

On May 6, 1968, at Oilwell's request, Fryer executed a guaranty in which it is stated that he unconditionally guarantees "payment at maturity of any and all indebtedness, including judgment," which the drilling company may owe to Oilwell. The agreement contains this provision: "This guaranty shall be revolving and continuous to the extent of $_____, plus interest, costs, and expenses, all as is hereinafter provided, and in the event the amount of liability is not limited in the space herein provided, then this guaranty shall be unlimited."

In June, 1968, the drilling company gave its promissory note in the amount of $98,493 to Oilwell as part-payment for a used drilling rig. The note was renewed a few months later. In October, 1968, the drilling company purchased another used rig from Oilwell and gave its promissory note in the amount of $80,341 as payment. The notes were payable in monthly installments. Oilwell reserved a purchase money security interest in the rigs, and the drilling company executed security agreements in favor of Oilwell.

By March, 1969, the drilling company was suffering financial difficulties and was delinquent on its payments on the notes. At Fryer's suggestion, the rigs were returned to Oilwell's used-equipment lot in Oklahoma City. In time, Oilwell declared the balance due on the notes, foreclosed its security interest, and sold the rigs at public auction. Oilwell purchased the rigs at the sale paying $65,000 for the first rig and $70,000 for the second rig.

Oilwell brought this suit against Fryer and the drilling company to recover deficiency judgments totaling about $34,000 and to recover about $80,000 for merchandise and equipment sold by Oilwell to the drilling company on open account.

Among other defenses set forth in their answers, Fryer and the drilling company alleged that the prices paid for the rigs by Oilwell at the foreclosure sale were not "fair, adequate and just prices"; that each of the rigs had an actual cash market value in excess of $100,000 at the time of the sale; and that, by reason thereof, the defendants were not indebted to Oilwell for any deficiency balances on the notes. Additionally, Fryer pleaded that the guaranty was not unlimited; that Oilwell's agent represented to him at the time of signing that the guaranty would apply only to the purchase price of the first rig; that he relied upon the representation; that the representation was "false and fraudulent"; and that but for the representation he would not have executed the guaranty.

Trial was to a jury. Pertinent to the questions on this appeal, the jury, answering special issues numbered as follows, (1) found that Oilwell's agent "represented as a fact to R. J. Fryer that the guaranty agreement covered only the purchase cost of drilling rig No. 1": (2) failed to find from a preponderance of the evidence that the representation was false; (3) failed to find from a preponderance of the evidence that the representation was made for the purpose of inducing Fryer to sign the

guaranty; (4) found that Fryer "believed and relied upon the representation"; (5) found that "except for such representation" Fryer would not have signed the guaranty; and (12), (13) found that at the time of the foreclosure sale rig number one had a market value of $80,000 and rig number two had a market value of $70,000.

All of the parties moved for judgment on the verdict. Oilwell's motion was granted.

Appellants present five points of error asserting (1) that they were entitled to credit on the notes for the amounts found by the jury to be the reasonable market values of the rigs at the time of the foreclosure sale; and (2) that the jury findings establish that Fryer's guaranty "covered only the purchase cost of drilling rig No. 1."

The security agreements provided for public or private foreclosure sale by Oilwell after ten days notice to the drilling company, and also provided that "Oilwell may bid and become a purchaser" at the sale.

█ On the trial, Oilwell established its case on the notes by introducing them in evidence. It also proved the security agreements and that a credit of $135,000 was allowed on the notes as a result of the sale of the rigs. Once Oilwell made out its case, the burden shifted to appellants to show why Oilwell should not recover the deficiency on the notes. Tarrant Savings Association v. Lucky Homes, Inc. (Tex., 1964) 390 S.W.2d 473, 474.

Other than the alleged inadequacy of the price paid for the property at the foreclosure sale by Oilwell, appellants make no complaint of any impropriety in connection with the sale. No finding of any irregularity in the holding of the sale was sought of the jury.

█ A mortgagee with power to sell may purchase at his own sale made at public auction; and mere inadequacy of consideration does not render a foreclosure sale void if the sale was legally and fairly made. Tarrant Savings Association v. Lucky Homes, Inc., supra. For avoidance of a mortgagee's sale there must be proof of an irregularity that caused or contributed to cause a sale for a grossly inadequate price. Sparkman v. McWhirter (Tex.Civ.App., 1954, writ ref.), 263 S.W.2d 832, 837.

█ Without detailing the evidence, we hold that it is factually sufficient to show, if it does not conclusively show, that the foreclosure sale was legally and fairly made at public auction, after full notice to appellants, in keeping with the provisions of the security agreements. Moreover, as shown by the record, the price paid for the rigs by Oilwell was 90% of their market value. We hold as a matter of law that this consideration was not inadequate.

█ Appellants cite no cases and we have found none which hold that following a valid foreclosure sale a mortgagor is entitled to have the market value of his collateral, rather than the amount received for it at the sale, credited on his note. In Tarrant Savings Association v. Lucky Homes, supra, the court held that (1) if the sale is valid the mortgagee is entitled to judgment for the amount of the note less the amount received at the sale; and that (2) if the sale is *invalid* and title to the property has passed to a third person or the property has been appropriated to the use and benefit of the mortgagee, *then* the mortgagor is entitled to have the reasonable market value of the property credited on the note.

Appellants' first contention is overruled.

█ The guaranty, on its face, is unlimited. As shown above, Fryer alleged and sought to establish that the guaranty is in fact limited and that its execution in unlimited form resulted from the misrepresentation of Oilwell's agent.

The record shows, without need of reference to the statement of facts, that the representation which the jury found was made by Oilwell's agent is false. Oilwell's cause of action against Fryer is based solely upon the guaranty. Oilwell attached a copy of the guaranty to its petition, incor-

**860**

porated it by reference in the petition, and alleged that it was unlimited. The representation cannot, under Oilwell's position, be true. We believe that the fact of the false representation, coupled with the additional jury findings that Fryer believed and relied upon the representation and that he would not have signed the guaranty but for the representation, established Fryer's defense and entitled him to a judgment on the verdict. In our view, an affirmative answer to issue no. 3 was not necessary to Fryer's defense.

In the case of Dallas Farm Machinery Company v. Reaves, 158 Tex. 1, 307 S.W. 2d 233, 240 (1957), the court adopted the following rule from Elliott on Contracts, Vol. 1, Sec. 70:

> "If one is induced to go through the form of making a contract because of some fraud or misrepresentation made by the other party or his agent, relative to a material element of the agreement, such that if he had known the truth he would not have given his assent, the contract may be avoided by him. There can be no real assent when it is induced by fraud."

We hold that the trial court erred in overruling Fryer's motion for judgment on the verdict insofar as it would have limited his individual liability to the amount of the deficiency on the first note resulting from the foreclosure sale of rig no. 1.

In the judgment, the trial court wisely set forth separately the recoveries allowed Oilwell on the two note deficiencies and on the open account. It allowed a recovery against Fryer and the drilling company "individually, jointly and severally" on each item. The judgment is reformed by deleting therefrom that portion that allows Oilwell a recovery against Fryer on the balance due on the note of October 28, 1968 (the second note), and on the open account. As reformed, the judgment is affirmed.

Reformed and affirmed. Costs of this appeal are taxed against the drilling company.