No. 14340

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

FARMERS STATE BANK, a Montana
Corporation, Victor, Montana,

                Plaintiff and Appellant,

-vs-

MOBILE HOMES UNLIMITED, E. R. VALLANCE,
BARBARA VALLANCE and DON GARROD,

                Defendants and Respondents.

---

Appeal from:  District Court of the Fourth Judicial District,
              Honorable E. Gardner Brownlee, Judge presiding.

Counsel of Record:

    For Appellant:

        Jack W. Stark argued, Victor, Montana

    For Respondents:

        Boone, Karlberg and Haddon, Missoula, Montana
        Sam  E. Haddon argued, Missoula, Montana
        Curtis C. Cook argued, Hamilton, Montana

---

                Submitted:  February 13, 1979

                  Decided: APR 20 1979

Filed: APR 20 1979

*Thomas J. Kearney*
                Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Farmers State Bank appeals from findings of fact, conclusions of law and judgment entered by the District Court of Ravalli County, holding that because the bank had acted in a manner not authorized by the Uniform Commercial Code (U.C.C.) in repossing certain property and dealing with certain notes, it was precluded from recovering a deficiency judgment on the notes from obligor Mobile Homes Unlimited or guarantors E. R. Vallance, Barbara Vallance, and Don Garrod.

Respondents E. R. Vallance and Don Garrod were the operators of a trailer sales facility, Mobile Homes Unlimited. Each owned a half interest in the enterprise. The business had a "floor plan" financing arrangement with appellant Farmers State Bank whereby the bank would loan money for the purchase of trailers and respondents would execute notes to the bank with the trailers as security, with the idea that respondents would be able to re-sell the trailers, pay off the notes, and still realize a profit for the business.

In 1975, Garrod arranged to sell his half interest in Mobile Homes Unlimited to Vallance. At that time, five trailers were obligated to the bank under the floor plan arrangement, each secured by a separate note.

As a result of the sale of Garrod's interest to Vallance, it was necessary to refinance the Mobile Homes Unlimited units that were floor planned by the bank. The five notes for the five units involved were consolidated into a single note for $50,609. The note named Mobile Homes Unlimited as maker and was executed by E. R. Vallance, President, and Barbara Vallance, Secretary-Treasurer. On the reverse side the note was signed individually by E. R. Vallance, Barbara Vallance, and Don Garrod as guarantors. At the same time this note was executed (April 7, 1975), a separate note for $9,287.04, covering other obligations of Mobile Homes

- 2 -

Unlimited to the bank, was also executed in like manner with the Vallances and Garrod again signing in their individual capacities as guarantors. The larger note was secured by the five trailers, and a U.C.C. financing statement listing them was properly filed. The smaller note was unsecured.

On June 11, 1976, a complaint was filed in the District Court, Ravalli County, alleging that the two notes were in default and seeking recovery from respondents of a balance due of $26,665.55 on the larger note and $8,287.04 on the smaller note. The complaint noted that two mobile homes remaining under the security agreement (the other three having already been sold by Mobile Homes Unlimited) had been repossessed by the bank and would be sold. They subsequently were sold and the proceeds applied to the balance due, reducing the amount in controversy.

Separate answers were filed by Garrod, Mobile Homes Unlimited, and the Vallances. Garrod alleged, among other things, that any sums owing had been paid. Mobile Homes Unlimited alleged that plaintiff had derived more than sufficient funds to pay off the smaller note from the sale of the two trailers it took into possession under the security agreement, and that the larger note would have been paid off already if payments which Mobile Homes previously made had been applied in accordance with an agreement which had been reached during the negotiations leading to the execution of the notes, which agreement the bank had allegedly ignored. The answer of the Vallances also alleged that the notes would have been paid off already if the payments had been properly applied, and contended further that they were discharged of any obligation because the bank allegedly failed to give them proper notice under the U.C.C. regarding sale of the repossessed trailers. A later amended answer and counterclaim was filed by Mobile Homes Unlimited adding the allegation that the bank had unlawfully seized certain items in which it had no security

interest when it repossessed the trailers. The counterclaim sought $10,000 damages for the items allegedly seized unlawfully and $10,000 punitive damages.

Trial was held before Judge E. Gardner Brownlee on December 17, 1976, August 27, 1977, and October 28, 1977. The fragmentation was the result of recesses imposed by Judge Brownlee because the evidence was being presented in such a confused manner that he was unable to follow the arguments and he therefore required the parties to sort out their contentions and submit them in intelligible written form.

The evidence adduced at trial indicated that for certain checks paid to the bank by Mobile Homes Unlimited which had notations on them in regard to the manner in which they were to be applied to reduce the obligations, the bank disregarded the notations and distributed the funds to suit its own purposes, contrary to both the notations on the checks and to the manner of distribution that had been previously agreed upon in the negotiations leading up to the execution of the notes.

The evidence in regard to the repossession and sale of the collateral was that an officer of the bank, accompanied by respondent Garrod, had gone to the Mobile Homes Unlimited lot; that the two trailers still covered by the security agreement together with a third trailer not covered by any agreement but which had been received as a trade-in on the sale of one of the other secured trailers were taken; that Don Garrod took and sold eight furnaces not covered by any security agreement and turned the proceeds over to the bank; and that in the trailers seized by the bank were certain items of furniture which defendants alleged were not covered by the security agreement. There was conflicting evidence as to whether all respondents had been given notice as required under the U.C.C. before the sale of the repossessed trailers.

- 4 -

It was established that both notes involved had been extended six months, the extension being signed "Mobile Homes Unlimited X E. R. Vallance." No notice was given to Don Garrod that the extension was being made.

The last entry on the reverse of the larger note is under "Advances Given" and is in the sum of $500, increasing the balance due from $3,605.55 to $4,105.55. The bank's testimony was that this was not really an "advance" but rather a return to a buyer of one of the repossessed trailers because the trailer had been sold to him as a 1974 model whereas it was actually a 1973. No notice of this "advance" was given to any of the defendants.

Subsequent to trial, on February 6, 1978, findings of fact, conclusions of law and judgment were entered. The District Court found that the bank had taken possession of a trailer not a part of any security agreement (even though the trailer was a trade-in on one which was covered by a security agreement); that the bank took possession of some furniture and furnaces not listed on any security agreement; that the bank "in effect took over the operation of the business and made disposition of property in the manner not completely authorized by the U.C.C. or the Security Agreement"; that from the evidence submitted it was impossible for the court to determine what amount would be owed the bank if it had proceeded properly; and that any deficiency "could just as well be the result of improper conduct on the part of the plaintiff bank as it could be the result of defendants' actions." The court also found that the Vallances had filed a counterclaim against the bank (erroneous--the only counterclaim was filed by Mobile Homes Unlimited) but were not entitled to any judgment thereon. Finally, the court found that none of the guarantors were obligated for any deficiency on the notes. No specific finding was made whether defendant Mobile Homes Unlimited, the maker, was or was not so obligated. The single conclusion of law

- 5 -

and the judgment reached from these findings were worded almost identically: "None of the parties to this action are entitled to any judgment against any of the other parties." From those findings, conclusions, and judgment the bank has brought this appeal.

Broadly stated, the only issue involved in this appeal is whether the trial court's findings and conclusions are supported by the evidence. Numerous specific questions underlie this general issue, including several matters raised by Garrod and the Vallances in reliance on the principle that a guarantor is exonerated if a creditor alters the original obligation of the principal. See section 30-208, R.C.M. 1947, now section 28-11-211(1) MCA. These matters, however, do not appear to have been central to the trial court's decision. Rather, the underlying basis of the trial court's judgment is that plaintiff is barred from recovering any deficiency remaining unpaid on the notes because it failed to act in a commercially reasonable manner in regard to the repossession and sale of the collateral.

Under the U.C.C., section 87A-9-504(3), R.C.M. 1947, now section 30-9-504(3) MCA, a secured party's right to dispose of collateral after default is subject to the requirement that "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." While the District Court's findings do not specifically state that appellant failed to act in a commercially reasonable manner, that is the net effect of the finding that the bank "made disposition of property in the manner not completely authorized by the Uniform Commercial Code or the Security Agreement." Therefore, we frame the issue as follows: Whether the trial court erred in finding that Farmers State Bank acted in a manner not authorized by the U.C.C. in handling the repossession and sale of collateral and is thereby

barred from recovering any deficiency judgment from either the maker or the guarantors of the notes secured by that collateral.

Under the U.C.C., the courts have generally taken the view that the burden of proving the commercial reasonableness of the disposition of collateral is on the secured party. Annot. 59 ALR3d 369. It is also generally held that a secured creditor's failure to give the notice required under U.C.C. §9-504(3) (in Montana, section 87A-9-504(3), R.C.M. 1947, now section 30-9-504(3) MCA) prior to disposition of collateral precludes or limits the creditor's right to recover a deficiency judgment. Annot. 59 ALR3d 401.

Rule 52, M.R.Civ.P., which requires that in all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially, also provides in pertinent part:

> "Findings of fact shall not be set aside unless
> clearly erroneous, and due regard shall be given
> to the opportunity of the trial court to judge
> of the credibility of the witnesses."

In attempting to apply the foregoing principles to this case, we have reviewed again and again all the pleadings, exhibits and testimony comprising the record. Our endeavor leaves us in complete sympathy with the consternation of the trial court as attested to in its finding that ". . . from the evidence submitted . . . it is impossible to determine what, if any, amount would be due to the plaintiff if the plaintiff had proceeded in a manner authorized by the U.C.C. and its Security Agreement."

As we previously mentioned, the trial court judge imposed two recesses in the trial of this matter because the parties' presentation was so disorganized. Illustrative of the confusion that characterized this proceeding is the contradictory evidence on whether notice of the sale of the repossessed collateral was given. Plaintiff's prime witness, a bank officer, testified that

"to the best of his knowledge" Mobile Homes Unlimited was not given notice before the trailers were sold. Respondents rely heavily on this testimony to argue that the bank acted in a commercially unreasonable manner and is thereby barred from recovering a deficiency judgment. At a later date in the trial, however, both Don Garrod and E. R. Vallance appear to testify on cross-examination that they were sent a letter of notice of the impending sale as required by the U.C.C. We say they "appear" to have so testified, because the exhibit they refer to (the letter) was mislabeled when it was put into evidence. Plaintiff's counsel never does explain the testimony of his own witness that no such notice was sent to Mobile Homes Unlimited.

Conflicts in the evidence are not confined to the issue of notice. There was evidence that the bank repossessed a trailer that had been taken as a trade-in on one of the secured units, and on that ground the bank objects to the finding that it took into possession a trailer home "that was not a part of any security agreement." The bank argues that the taking of this trade-in trailer was merely a seizure of its own property because the trade-in was "proceeds" of the collateral under section 87A-9-306, R.C.M. 1947, now section 30-9-306 MCA. In reviewing the exhibits, however, we note that the security agreement filed by the bank left blank the item providing that "Proceeds of collateral are also covered." The bank has done nothing to show that it comes within section 87A-9-306, R.C.M. 1947, now section 30-9-306 MCA. We also note that there was evidence that the bank did not give Mobile Homes Unlimited full credit for the amount agreed upon as the value of the trade-in.

There is likewise conflicting evidence on the matter of whether the bank wrongfully seized some furnaces in which it had no even arguable security interest. The bank contends that Don Garrod, not it, seized the furnaces. It appears from testimony

ignored by the bank, however, that it directed Garrod to take the furnaces and sell them, and if he had not then the bank would have. Further, the signature of a bank officer appears on the inventory list of the furnaces drawn up at the time they were seized.

Appellant complains in its brief that the trial court "does not feel the need to point out the specific sections of the Uniform Commercial Code which the Bank failed to observe". We have indicated in a recent opinion that such an objection raises no reversible error:

> " . . . findings of fact and conclusions of law will support a judgment, though they are very general, where they in most respects follow the allegation of the pleadings. Findings should be limited to the ultimate facts and if they ascertain ultimate facts, and sufficiently conform to the pleadings and the evidence to support the judgment, they will be regarded as sufficient, though not as full and complete as might be desired." Holloway v. University of Montana (1978), ____ Mont.____, 582 P.2d 1265, 1268, 35 St.Rep. 1228, 1232, citing Pearson v. Pearson (Utah 1977), 561 P.2d 1080.

If a trial court's findings are sustained by competent, substantial, although conflicting evidence, they will not be disturbed on appeal. Holloway, supra. The evidence will be reviewed in the light most favorable to the prevailing party, and the credibility of witnesses and weight accorded their testimony is for the District Court's determination in nonjury trials. Arrowhead, Inc. v. Safeway Stores, Inc. (1978), ____ Mont.____, 587 P.2d 411, 35 St.Rep. 1830.

On the record before us, we cannot conclude that the District Court's findings are "clearly erroneous". Rule 52, M.R. Civ.P. As to appellants' contention that patent error was committed in the finding that the Vallances had filed a counterclaim, whereas the only counterclaim was filed by Mobile Homes Unlimited, such error was not prejudicial to appellant and affords no grounds for reversal in light of the finding that "Defendants are not

entitled to any judgment . . . upon their counterclaim."  Given

the state of the record established by appellant, the conflicts

in the evidence, the general rule that the secured party bears

the burden of demonstrating commercial reasonableness upon dis-

position of collateral, and the presumptions in favor of the

correctness of the District Court's findings, the judgment ap-

pealed from is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 10 -