No. 84-281

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

VERLIN F. WIPPERT and LORETTA
L. WIPPERT,

Plaintiffs and Appellants,

-vs-

THE BLACKFEET TRIBE OF THE
BLACKFEET INDIAN RESERVATION,
et al.,

Defendants and Respondents.

---

APPEAL FROM: District Court of the Ninth Judicial District,
In and for the County of Glacier,
The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Frisbee, Moore & Stufft, Cut Bank, Montana

For Respondents:

Cannon & Sheehy; Ross W. Cannon, Helena, Montana

---

Submitted on Briefs: Sept. 6, 1984

Decided: February 14, 1985

Filed: FEB 14 1985

*Ethel M. Harrison*

---
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Verlin R. Wippert and Loretta Wippert Rex, plaintiffs below, appeal from a decision of the Ninth Judicial District, Glacier County, ordering the Wipperts to pay the Blackfeet Tribe a deficiency judgment of $14,330.59. We reverse.

This case was originally filed as a quiet title action, and was first considered by this Court in Wippert v. Blackfeet Tribe (Mont. 1982), 654 P.2d 512, 39 St.Rep. 2117. At that time we affirmed the trial court's determination that a Blackfeet Tribal Court judgment against the Wipperts must be enforced as a matter of comity. However, the case was remanded to the District Court for an independent determination of the correct amount remaining unsatisfied on the Tribal Court judgment.

The facts as gleaned from the record appear to be as follows: In 1974, the Wipperts operated a cattle ranch east of Browning, Montana on the Blackfeet Indian Reservation. In March of 1974 the Wipperts began borrowing money from the Blackfeet Tribal Credit Program. Funds totalling $44,729.97 were eventually advanced to the Wipperts by the Tribe. As part of the transaction, the parties entered into a security agreement on March 1, 1974. According to the agreement, the collateral for the loan was to be "all cattle . . . now owned or hereafter acquired by the debtors." The security agreement contained a default clause, and provided that in case of default the rights and duties of the parties would be governed by the Montana Uniform Commercial Code (UCC). The agreement specifically provided that any notice of sale of the collateral required by the UCC would be satisfied "by

2

giving the Debtor at least five days prior written notice of the time and place of any public sale . . . "

The Wipperts defaulted on their loan in November of 1975. They were notified of the Tribe's intention to foreclose on the loan to enforce the security agreement in a March 8, 1976 letter from the Blackfeet Tribal Credit Committee. While that letter mentioned the Committee's intent to sell the collateral and apply the proceeds to the amount unpaid on the loan, it said nothing about the time or place of the proposed sale. The record indicates that the Wipperts received no notice at all from the Tribe informing them of the date and location of the foreclosure sale.

On April 15, 1976, the Blackfeet Tribal Court issued its order finding the Wipperts in default on the loan and permitting the tribe to sell the Wipperts' cattle in order to satisfy the outstanding balance due.

The cattle were sold at public auction in Shelby, Montana on April 19, 1976. After deducting the costs of caring for the cattle prior to sale, the Tribe applied $27,031 to the amount due on the Wipperts' loan, leaving a deficiency of $17,698.

The trial upon remand was heard on March 23, 1983, before the Honorable R. D. McPhillips, sitting without a jury. On March 28, 1984, the court filed its findings and conclusions and an order requiring the Wipperts to pay to the Tribe the $14,330 that remained unpaid after other funds had been applied to the deficiency. The court also ordered the Wipperts to pay the Tribe's costs and attorney fees. The Wipperts appeal from this judgment.

The following issues are presented for review:

1. Did the District Court err in ruling that the Tribe complied with the notice requirements of the UCC thereby entitling it to a deficiency judgment?

2. Did the District Court err in awarding the Tribe attorney fees?

3. Did the District Court err in allowing the Tribe to recover interest in its judgment?

4. Did the District Court err in determining the unpaid balance on the loan from the Tribe to the Wipperts?

Upon consideration of the first issue, we conclude that the judgment against appellants must be reversed. We therefore need not address the remaining issues.

The Wipperts maintain the District Court's deficiency judgment cannot stand in light of the fact that the Tribe failed to give the Wipperts adequate notice of the sale of their collateral as required by both section 30-9-504(3), MCA, and the terms of the security agreement between the parties.

Title 30, Chapter 9, MCA is that portion of the UCC which regulates secured transactions. Section 30-9-504(3), MCA prescribes the manner in which a secured party may dispose of collateral following default. In pertinent part, that statute provides:

> "(3) . . . Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale . . . shall be sent by the secured party to the debtor.
> . . ."

4

The respondent Tribe argues that since the collateral in this case was of a type customarily sold on a recognized market, i.e. cattle sold at public auction, notice of sale was not required under section 30-9-504(3), MCA. We do not agree that cattle constitute a type of collateral "customarily sold on a recognized market." It has been found that a "recognized market" under UCC section 9-504(3) would be akin to a stock market, or commodity market. O'Neil v. Mack Truck, Inc. (Tex.Civ.App. 1976), 533 S.W.2d 832, 836; Norton v. National Bank of Commerce of Pine Bluff (Ark. 1966), 398 S.W.2d 538, 540. These markets deal with essentially tangible goods whose price is determined by external factors normally beyond the control of specific interested buyers, and where "haggling and competitive bidding are not primary factors in each sale." Norton, 398 S.W.2d at 540. See also White and Summers, Uniform Commercial Code §26-10 (1980). The "recognized market" exception was included in the statute because lack of notice to the debtor in such cases would not prejudice the debtor's right to minimize his liability by participation in the sale. Norton, 398 S.W.2d at 541.

We concur with the reasoning of the North Dakota Supreme Court in State Bank of Towner v. Hansen (N.D. 1981), 302 N.W.2d 760, 765, where it was stated:

> "Neither livestock nor farm machinery are sold on markets wherein the price is fixed at any given moment and is free from competitive bidding. To the contrary, competitive bidding is the focal point of the type of auction sales at which this collateral was disposed. A debtor, upon receiving proper notice, might be able to attract additional interested persons to bid up the price of these goods, or he might attend himself and bid at the auction. Thus, the failure to give the debtor notice might very well result in prejudice to him. We agree with the Texas Court of Civil

5

Appeals in O'Neil, supra that 'the term "recognized market" within the meaning of the U.C.C. is most restrictive.' Only those items of collateral which are commonly sold on a market such as the stock market or the commodity market wherein the price at any given moment is fixed and is free from an individualized competitive bidding process fall within the category of 'recognized market' collateral which is exempt from the notice requirement. . ."

We conclude that cattle are not a type of collateral customarily sold on a recognized market, and for that reason the Tribe was obligated to provide the Wipperts with "reasonable notification of the time and place" for the public auction sale of the cattle.

Although the UCC is silent regarding what constitutes reasonable notice, the official comment to section 30-9-504 provides some guidance: "[A]t a minimum [notice] must be sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests by taking part in the sale or other disposition if they so desire." In addition, we note that the parties specifically agreed in their security agreement on what notice to the debtor would be required in the event of a foreclosure sale. Section 8 of the security agreement provides that the rights and responsibilities of the parties are to be controlled by the UCC and then states: "Any requirement of said Code of reasonable notification of the time and place of any public sale . . . shall be met by giving the Debtor at least five days prior written notice of the time and place of any public sale." This agreement concerning notice requirements is valid and binding on the parties so long as it is not manifestly unreasonable. Section 30-9-501(3)(b), MCA; Liberty Bank v. Honolulu Providoring,

Inc. (Hawaii 1982), 650 P.2d 576, 579; Chapman v. Field (Ariz. 1979), 602 P.2d 481, 485. Under the circumstances, we cannot say that the notice requirement specified in the agreement is manifestly unreasonable.

It is clear from our review of the record that no notice whatsoever regarding the time and place of the foreclosure sale was given by the Tribe to the Wipperts. At trial evidence of notice-of-sale was the following letter from the Tribal Credit Committee to the Wipperts:

> "March 8, 1976. Dear Mr. and Mrs. Wippert: At a duly called, noted and convened session of the Blackfeet Tribal Credit Committee the following action was taken on your loan, CF3411 with the Blackfeet Tribe of the Blackfeet Indian Reservation: After again reviewing all the facts the motion carried to declare in default and proceed with foreclosure to proper procedure to have the cattle picked up and taken to market. It is the committee's intention that all security offered for CF3411 be sold and the proceeds, less cost of sale, applied on the loan. This action is being taken in accordance with authority given by you in Section 7 of the Loan Agreement, CF3411."

This letter fails to satisfy the notice requirements of either the UCC or the security agreement. There is no mention of either the time or place of sale, and without that information a debtor is precluded from taking action to assure that a competitive price is obtained for his collateral at a public sale.

We hold that failure to provide the notice required by section 30-9-504(3), MCA, precludes a creditor's right to obtain a deficiency judgment. See Farmers State Bank v. Mobile Homes Unlimited (1979), 181 Mont. 342, 593 P.2d 734.

The failure of respondent to provide the notice required precludes the issuance of a deficiency judgment in this case.

7

The decision of the District Court is reversed and the matter is remanded for further proceedings in accordance with this opinion.

_____
Justice

We concur:

_____

_____

_____

_____
Justice

8