No. 84-432

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

BANK OF SHERIDAN, a Montana Banking
Corp.,

        Plaintiff and Respondent,

    -vs-

CLOYD W. DEVERS,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Datsopoulos, MacDonald & Lind; Edward A. Murphy,
        Missoula, Montana

    For Respondent:

        Kirwan & Barrett; Kelly M. Hogan, Bozeman, Montana

---

Submitted on Briefs:  June 6, 1985

Decided:  July 30, 1985

Filed:    JUL 30 1985

*Ethel M. Harrison*

---

Clerk

Mr. Justice Frank B. Morrison delivered the Opinion of the Court.

Cloyd W. Devers appeals the January 18, 1984, findings of fact and conclusions of law and the July 24, 1984, order of the Fifth Judicial District Court granting two deficiency judgments to the Bank of Sheridan. We reverse the order of the District Court.

Appellant Cloyd Devers (Devers) executed two promissory notes to the Bank of Sheridan (Bank) on April 16, 1981, one for $94,802.71 and the other for $21,580.03. The notes were secured by Devers' farm machinery, equipment and livestock. Devers subsequently defaulted on the notes. Devers filed a petition for bankruptcy on August 21, 1981. Bank filed a complaint August 25, 1981, demanding the $104,021.90 due and owing on the two notes. Subsequently, with the Bankruptcy Court's permission, Bank repossessed the collateral. The livestock was immediately sold at a public auction in Idaho Falls, Idaho. The farm machinery and equipment were sold at various sales over a period of time.

A written notice dated November 8, 1982, was sent by the attorney for Bank to Devers stating that certain listed farm machinery and equipment would be sold at a private auction in Bank's lobby on November 19, 1982, at 10:00 a.m. The local newspapers were unable to publish the notice prior to November 19, 1982. Therefore, the sale date was changed to November 24, 1982. A notice was published in three local papers listing the items for sale (including two pieces of equipment not listed on Devers' notice) and stating the following:

"Submit Bids to Jim Shires, Bank of Sheridan, P. O. Box 587, Sheridan, Mt. 59749

"Please enclose a separate sealed envelope with your bid enclosed, showing 'equipment bid' on the outside of envelope. Bids will be opened November 24, 1982, at 10:00 a.m. We reserve the right to

refuse any or all bids. Contact Jim Shires at 842-5411 to view any of these items."

This same notice was posted in Bank's lobby.

Devers contends he received no notice, written or oral, other than that dated November 8, 1982, and that he was never notified of the change in the sale date. Mr. Robert T. Smith, President of the Bank of Sheridan, testified at trial that he was certain Mr. Shires, then Vice President of Bank, had "informed" Devers of the sale. Regarding his conversation with Devers, Mr. Shires testified as follows:

"Q. I'll refer you to the auction sale, private auction sale of November 24th, 1982, and the days prior to that. Did you have occasion at any time during the month of November to discuss this particular sale with Mr. Devers?

"A. On one occasion, Mr. Devers called me concerning the pickup that was being sold, yes.

"Q. Do you recall approximately when that conversation took place?

"A. Some time inbetween taking possession of the equipment and the sale.

"* * *

"Q. Did he question you at any time concerning the particular time that the sale was going to take place, or anything of that nature?

"A. I believe we discussed that. We talked about the sale and the fact that we were taking bids on the equipment, yes."

Approximately one-half of Devers' farm machinery and equipment was sold at the November 24, 1982, sale. The remaining equipment was sold at several different "private treaty" sales over the course of several months. It is undisputed that Devers was given no notice of any sale subsequent to November 24, 1982.

After the collateral was sold, Bank filed a motion for judgment by default on September 26, 1983, requesting deficiency judgments of $36,995.21 on one note and $7,908.96 on the other, attorney's fees, collection expenses and costs.

3

Following a bench trial, Bank was awarded deficiency judgments of $29,926.22 and $7,908.83, as well as $5,733.58 for the cost of the sales.

In his appeal of the order, Devers raises the following issues:

1. Whether the trial court erred in holding Devers liable for deficiencies on two promissory notes when: approximately one-half of the notes' collateral was sold at a sale; Devers' notice of sale was erroneous as to the date and nature of the sale; and the other half of the collateral was sold at sales with no notice to Devers?

2. Assuming Devers is liable for the deficiencies, is the trial court's determination of the amount of deficiency supported by substantial credible evidence?

Our resolution of issue one renders consideration of issue two moot.

The Uniform Commercial Code is codified in Title 30, Chapters 1 through 9 of the Montana Code Annotated. Pursuant to § 30-9-504(3), MCA, a secured creditor is entitled to sell collateral after a default, so long as "every aspect of the disposition including the method, manner, time, place, and terms" are commercially reasonable. This includes a commercially reasonable notification to the debtor of the pending sale. Montana statutes provide:

> "Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor if he has not signed after default a statement renouncing or modifying his right to notification of sale." § 30-9-504(3), MCA.

Devers never renounced his right to notification.

4

"[T]he burden of proving the commercial reasonableness of the disposition of collateral is on the secured party." Farmers State Bank v. Mobile Homes Unlimited (1979), 181 Mont. 342, 347, 593 P.2d 734, 737. The burden of proving the commercial reasonableness of the notification of a debtor of an impending sale is therefore on the secured party. Bank has not met this burden.

Devers alleges that the November 8, 1982, notice of sale was commercially unreasonable because it contained an incorrect sale date and stated that the sale would be private, when in fact the actual sale conducted was public. We need not decide the nature of the November 24, 1982, sale as the notice given Devers was commercially unreasonable notice of either a private or a public sale.

The only written notice given Devers of the initial sale contained the wrong date. It also failed to state that sealed bids were to be submitted. The only evidence presented by Bank to counter Devers' testimony that he received no notice, written or oral, of the correct date of the sale was Mr. Shire's testimony quoted previously. However, Shires never testified that he told Devers the correct date of the sale. Further, neither the sale notices in the newspapers nor the notice posted in Bank's lobby could be relied on by Bank to provide notice of the correct date and method of sale to Devers. See Liberty National Bank of Fremont v. Greiner (Ohio App. 1978), 405 N.E.2d 317, and Hodges v. Norton (N.C.App. 1976), 223 S.E.2d 848.

Finally, Bank failed to provide Devers with notice of any sale held subsequent to November 24, 1982. In order for the manner of disposition of the collateral to have been commercially reasonable and fair to debtor, notice of these subsequent sales should also have been provided. As time

5

passed, Devers might have found himself in a more stable position and thus able to purchase some of his own equipment.

On the basis of the preceding discussion, we hold that the following finding of the trial judge is not supported by substantial, credible evidence.

> "4. The secured property was sold by the Plaintiff, the livestock at a public auction at a livestock market and the farm machinery and equipment and other property at a private sale conducted by the Plaintiff. The Defendant had both actual and constructive notice of the various sales and, in fact, by his conduct, ratified, approved and participated in the sale procedure."

Bank's failure to give the debtor commercially reasonable notice of the sales of his collateral precludes Bank from recovering any deficiency judgment from Devers. Wippert v. Blackfeet Tribe of the Blackfeet Indian Reservation (Mont. 1985), 695 P.2d 461, 42 St.Rep. 200.

The decision of the trial court awarding Bank two deficiency judgments against Devers is reversed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices