**AMERICAN STATE BANK OF KILLDEER, Plaintiff and Appellee,**

v.

**Dale HEWSON, Defendant and Appellant.**

**Civ. No. 11419.**

Supreme Court of North Dakota.

July 28, 1987.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiff and appellee; argued by Claudette M. Abel.

Howe, Hardy, Galloway & Maus, Dickinson, for defendant and appellant; argued by Albert J. Hardy.

ERICKSTAD, Chief Justice.

Dale Hewson appeals from the summary judgment entered by the District Court for the Southwest Judicial District on December 1, 1986, finding that American State Bank of Killdeer as a secured party sold his tractor with dozer as collateral in a commercially reasonable manner. We reverse and remand for further proceedings.

On October 11, 1984, Hewson executed a promissory note to the Bank in the sum of $40,000 payable with interest at the rate of fourteen percent per annum. Hewson provided as security for the promissory note

two fourteen foot drills[1] and a 1976 Steiger bearcat tractor with dozer. After defaulting on the note, Hewson voluntarily surrendered the tractor with dozer to the Bank on November 5, 1985.[2] The public sale of the tractor with dozer was published in *The Advertiser* and *The Dickinson Press* on November 13 and November 17, 1985, respectively.[3] On November 15, 1985, Hewson received a letter from the Bank informing him of the time and place of the public sale, of his option to redeem the tractor, and that he would "be liable for any deficiency resulting from the sale of the collateral." Hewson did not redeem the tractor and on November 20, 1985, the tractor with dozer was sold at public auction to the highest bidder for $8,700.00 The net proceeds of the sale of the tractor with dozer were credited to Hewson's loan balance.

On January 3, 1986, the Bank commenced suit to recover a deficiency remaining after crediting Hewson's account with the proceeds from the sale of the drills and tractor with dozer. In his answer, Hewson denied owing the amount of the deficiency asserting that the sale of the tractor was not conducted in a commercially reasonable manner and that the Bank had assured him that it would not sell the tractor with dozer for less than $20,000.00.

On February 25, 1986, the Bank moved for summary judgment. On March 17, 1986, the district court denied the motion for summary judgment.

On October 3, 1986, the Bank renewed its motion for summary judgment.

On October 9, 1986, Hewson moved to compel discovery asserting that the Bank's answers to certain interrogatories were evasive and incomplete. The district court did not rule on Hewson's motion to compel discovery believing the motion "was rendered moot because after application of the *Law* to the *undisputed* facts, the factual

---

1. There is no dispute on appeal as to whether or not the drills were sold in a commercially reasonable manner.

2. Hewson acknowledged the surrender of the tractor in a signed statement which reads as follows:

   "I hereby voluntarily surrender a <u>1986 Steiger Bearcat II Tractor</u> Serial # <u>3620</u> to American State Bank of <u>Killdeer.</u> I understand I have 10 days to redeem this vehicle. If I do not redeem this vehicle within 10 days it will be sold to the highest bidder and I will be responsible for the deficiency balance, if any.

   _____/s/_____ Date __11/5/85"__
   Dale Hewson

3. The advertisement reads as follows:

   "AUCTION SALE

   "Wednesday, November 20th, 6:30 P.M.

   "Located: Plaza Del Toro Bldg. on Radar Base Road, Dickinson, ND

   1972 LARK TRAVEL TRAILER 20′ SELF–CONTAINED
   1981 SUZUKI MOTORCYCLE 850
   1976 STEIGER BEARCAT II TRACTOR WITH 14′ DOZER
   1981 HONDA CX500 MOTORCYCLE
   DUNE BUGGY AND TRAILER
   RUBBER RAFT AND TRAILER
   1977 JOHN DEERE 440 CYCLONE SNOWMOBILE
   1979 POLARIS 500 SNOWMOBILE
   1979 JOHN DEERE SPECIAL JDX4 SNOWMOBILE
   1972 SKI–DO BOMBIDEERE 250 SNOWMOBILE
   1979 SCORPION STING 440 SNOWMOBILE
   1974 JOHNSON ROTARY POWERED 45 SNOWMOBILE
   1972 JOHNSON GOLDEN GHOST 30 SNOWMOBILE
   ALLIS CHALMERS 917 HYDRO WITH TILLER–GARDEN TRACTOR
   1985 JOHNSON 25 HP MOTOR
   1984 JOHNSON 30 HP MOTOR
   1985 CALKINS TRAILER
   1985 GLASTRON CVX–16 SPORT BOAT
   1985 JOHNSON 120 HP MOTOR
   1985 GLASTRON SC16 TRAILER
   1985 SYLVAN 18′ SUPER SPORTSTER
   1985 YACHT CLUB TRAILER          SALE
   1985 17′ YARCRAFT BOAT           WILL
   1985 YACHT CLUB TRAILER          BE
   1985 16′ YARCRAFT BOAT           HELD
   1985 YACHT CLUB TRAILER          INDOORS
   1982 HONDA 110 3–WHEELER
   7.5 HP GAMEFISHER MOTOR
   TANDEM AXLE FLATBED TRAILER 6×20

   1981 CHEVROLET CAMARO T–TOP BERLINETTA. air, tilt, cruise, power windows. AM/FM/Cassette
   Most merchandise new or like new. No small items so be on time
   Terms of sale cash. Not responsible for accidents. Owner: Rockland Stroh DBA Manning Sales & Service And Guest Consigners
       Auctioneer: Ron Schoch. Lic. #277
   Clerk American State Bank and Trust of Dickinson"

information sought in the interrogatories simply is not material or relevant."

On October 24, 1986, the district court entered its order granting the Bank's motion for summary judgment. The district court entered its amended order for summary judgment on November 19, 1986.

The dispositive issue on appeal is whether or not the district court erred when it granted summary judgment concluding that the tractor with dozer was sold in a commercially reasonable manner.

In *Thiele v. Security State Bank of New Salem*, 396 N.W.2d 295, 297 (N.D. 1986), we recently summarized the application of our rule for summary judgment as follows:

"Summary judgment is a procedural device available for the prompt and expeditious disposition of a controversy without a trial if there is no dispute as to either the material facts or the inferences to be drawn from undisputed facts, or if only a question of law is involved. *Herman v. Magnuson*, 277 N.W.2d 445 (N.D.1979). If different factual inferences may be drawn, they must be drawn in favor of the party opposing summary judgment. *Sigurdson v. Lahr & Lahr, Inc.*, 299 N.W.2d 792 (N.D.1980). However, even if factual disputes exist between the parties, summary judgment is appropriate if the law is such that the resolution of the factual dispute will not change the result. *Sande v. City of Grand Forks*, 269 N.W.2d 93 (N.D.1978)."

Hewson asserts that there are disputed issues of material fact and inferences to be drawn from undisputed facts as to whether or not the tractor with dozer was sold in a commercially reasonable manner. The Bank responds that it is entitled to a presumption that the tractor with dozer was sold in a commercially reasonable manner and that Hewson presented no evidence to show that the sale was not commercially reasonable and therefore he failed to overcome the presumption of a commercially reasonable sale.

Section 41–09–50(3), N.D.C.C. (U.C.C. § 9–504),[4] imposes a twofold obligation upon a secured party seeking to recover a deficiency to conduct the sale of the collateral in a commercially reasonable manner and to provide "reasonable notification of the time and place of any public sale." *See* Page, *A Secured Party's Right to a Deficiency Judgment after Non-compliance with the Resale Provisions of Article 9*, 60 N.D.L.Rev. 531, 533 (1984). Section 41–09–50(3) further requires that every aspect of the disposition be commercially reasonable. *Wallwork Lease & Rental Co. v. Schermerhorn*, 398 N.W.2d 127, 130–31 (N.D.1986). Whether or not a sale of collateral was conducted in a commercially reasonable manner is essentially a factual question. *United States v. Conrad Publishing Company*, 589 F.2d 949, 954 (8th Cir.1978); *Advanced Irrigation, Inc. v. First National Bank of Fargo*, 366 N.W.2d 783, 786 (N.D.1985).

There is a split of authority on the question of which party has the burden of proving the commercial reasonableness or un-

---

4. Section 41–09–50(3), N.D.C.C. (U.C.C. § 9–504), reads as follows:

"3. Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition, including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations, he may buy at private sale."

reasonableness of the disposition of collateral when a deficiency judgment is sought. *See Fedders Corp. v. Taylor*, 473 F.Supp. 961, 971 (D.Minn.1979); *Vic Hansen & Sons, Inc. v. Crowley*, 57 Wis.2d 106, 203 N.W.2d 728, 731–32 (1973); 9 Anderson, *Uniform Commercial Code*, § 9–504:13, at 703–08 (3d ed. 1985); 59 A.L.R.3d 369 (1974).

One line of authority holds that the secured party makes out a case for deficiency judgment by proving the debt and security agreement and that a credit of a stated amount has been allowed as the result of the sale of the collateral, and that the burden then shifts to the debtor to show why the creditor should not recover the deficiency. *Fryer & Willis Drilling Co. v. Oilwell, Division of United States Steel Corp.*, 472 S.W.2d 857 (Tex.Civ.App.1971); *Ekman v. Mountain Motors, Inc.*, 364 P.2d 998 (Wyo.1961).

Other authorities have held that the secured party has the burden to establish that every aspect of the sale was commercially reasonable. *Fedders Corp., supra; Vic Hansen & Sons, Inc., supra; United States v. Willis*, 593 F.2d 247 (6th Cir. 1979); *Comfort Trane Air Conditioning Co. v. Trane Co.*, 592 F.2d 1373 (5th Cir. 1979); *Chemlease Worldwide Inc. v. Brace, Inc.*, 338 N.W.2d 428 (Minn.1983); *Farmers State Bank v. Mobile Homes Unlimited*, 181 Mont. 342, 593 P.2d 734 (1979); *Vines v. Citizens Trust Bank*, 146 Ga.App. 845, 247 S.E.2d 528 (1978).

■■■ We agree with the United States District Court in *Fedders Corp.*, 473 F.Supp. at 972, that "the better rule would place the burden of proof on the secured party to show the commercial reasonableness of the disposition of collateral where the commercial reasonableness is challenged and the secured party seeks a deficiency judgment." The shifting burden of persuasion is explained by that court as follows:

5. Section 41–01–02(3), N.D.C.C. (U.C.C. § 1–102), reads as follows:
   "3. The effect of provisions of this title may be varied by agreement, except as otherwise provided in this title and except that the obligations of good faith, diligence, reasonable-

"Assuming the secured party makes a prima facie case indicating the commercially reasonable disposition of collateral, the burden of persuasion—though not the burden of proof—shifts to the debtor to elicit specific evidence of commercial unreasonableness in order to avoid entry of the requested deficiency judgment." 473 F.Supp. at 972. *See also Chemlease Worldwide Inc.*, 338 N.W.2d at 437.

■■■ To determine whether or not the Bank has met its burden of showing that it sold the tractor with dozer in a commercially reasonable manner, we need to ascertain the effect of Hewson's signed statement that he would "be responsible for the deficiency balance, if any." We note in accordance with Section 41–01–02, N.D.C.C. (U.C.C. § 1–102),[5] a secured party's duty to act in good faith with due diligence, reasonableness and care may not be disclaimed by agreement except that "the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable." *See Federal Deposit Insurance Corp. v. Forte*, 94 A.D.2d 59, 463 N.Y.S.2d 844, 850 (N.Y.App. Div.1983). This principle is also espoused in Section 41–09–47(3), N.D.C.C. (U.C.C. § 9–501(3)), which reads:

"To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the subsections referred to below may not be waived or varied except as provided with respect to compulsory disposition of collateral (subsection 3 of section 40–09–50) and with respect to redemption of collateral (section 41–09–52) but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable:

ness, and care prescribed by this title may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable."

"a. Subsection 2 of section 41–09–48 and subsection 2 of section 41–09–50 insofar as they require accounting for surplus proceeds of collateral.

"b. Subsection 3 of section 41–09–50 and subsection 1 of section 41–09–51 which deal with disposition of collateral.

"c. Subsection 2 of section 41–09–51 which deals with acceptance of collateral as discharge of obligation.

"d. Section 41–09–52 which deals with redemption of collateral.

"e. Subsection 1 of section 41–09–53 which deals with the secured party's liability for failure to comply with this part." *See also Liberty Bank v. Honolulu Providoring Inc.*, 65 Hawaii 273, 650 P.2d 576 (1982).

Accordingly, especially in light of subsections 3(b) and (c) above, the Bank's obligation to sell the tractor with dozer in a commercially reasonable manner cannot be said to have been waived by Hewson's signed statement.

The Bank asserts that under Section 41–09–53(2), N.D.C.C. (U.C.C. § 9–507(2)), it is entitled to a presumption that the sale was commercially reasonable in that the tractor with dozer was sold in a recognized market. Section 41–09–53(2) provides in part as follows:

"The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner."

In *State Bank of Towner v. Hansen*, 302 N.W.2d 760 (N.D.1981), we determined that a used car was not collateral of a type customarily sold on a recognized market so as to be exempted from the notice requirement of Section 41–09–50, N.D.C.C. (U.C.C. § 9–504). We said:

"Neither livestock nor farm machinery are sold on markets wherein the price is fixed at any given moment and is free from competitive bidding. To the contrary, competitive bidding is the focal point of the type of auction sales at which this collateral was disposed. A debtor, upon receiving proper notice, might be able to attract additional interested persons to bid up the price of these goods, or he might attend himself and bid at the auction. Thus, the failure to give the debtor notice might very well result in prejudice to him. We agree with the Texas Court of Civil Appeals in *O'Neil* [*v. Mack Trucks, Inc.*, 533 S.W.2d 832 (Tex.Civ.App.1975)], *supra* that 'the term "recognized market" within the meaning of the U.C.C. is most restrictive.' Only those items of collateral which are commonly sold on a market such as the stock market or the commodity market wherein the price at any given moment is fixed and is free from an individualized competitive bidding process fall within the category of 'recognized market' collateral which is exempt from the notice requirement under Section 41–09–50, N.D.C.C., [9–504, U.C.C.]." 302 N.W.2d at 765.

In this case, the tractor with dozer which was sold at public auction is clearly outside the restrictive definition of the term "recognized market" so as to be exempted from the notice and commercially reasonable requirements of Section 41–09–50. *See Hayes v. Ring Power Corp.*, 431 So.2d 226 (Fla.Dist.Ct.App.1983). In our view, no presumption of commercial reasonableness arises under subsection 41–09–53(2) from the mere sale through public auction. Here we have a sale of expensive farm machinery in the off season with seemingly much less expensive recreational items, many of which were in the off season. The auction bill of such items in that season was not likely to attract persons normally interested in buying expensive farm equipment.

The Bank also asserts that it is entitled to a presumption of commercial reasonableness pursuant to Section 41–09–53(1), N.D. C.C. (U.C.C. § 9–507(1)),[6] in that it provided notice to Hewson that it would sell the tractor with dozer to the highest bidder at public auction. We disagree.

■ In *State Bank of Towner v. Hansen*, 302 N.W.2d at 768, we explained that a presumption that the fair market value of the collateral is at least equal to the amount of indebtedness arises where the secured creditor does not dispose of the collateral in a commercially reasonable manner. *See also Conrad Publishing Company*, 589 F.2d at 955; *State Bank of Burleigh County Trust Company v. All-American Sub, Inc.*, 289 N.W.2d 772, 780 (N.D.1980). Because the requirements of notice and commercial reasonableness are two distinct obligations, we do not believe that notice is in itself sufficient to give rise to a presumption of commercial reasonableness nor do we believe Section 41–09–53(1) can be read as requiring such a result. This finding is consistent with the general objective of Section 41–09–53(1) which is to give the injured party remedies against a secured party who fails to observe the provisions of the Uniform Commercial Code. 9 Anderson, *supra*, § 9–507:3, at 826.[7]

■ Having decided that the Bank is not entitled to a presumption that the tractor with dozer was sold in a commercially reasonable manner, we need to determine whether or not the district court properly granted summary judgment in light of the competent evidence before it.

For the Bank to meet its burden of proving every aspect of the sale of the tractor with dozer to be commercially reasonable, it must affirmatively establish that the "terms" of the sale were commercially reasonable; this includes the burden of showing that the resale price was the fair and reasonable value of the collateral. *Comfort Trane Air Conditioning*, 592 F.2d at 1387; *Vines*, 247 S.E.2d at 531; *Granite Equipment Leasing Corp. v. Marine Development Corp.*, 139 Ga.App. 778, 230 S.E.2d 43, 44 (1976); *Chemlease Worldwide Inc.*, 338 N.W.2d at 437; *First National Bank of Kenosha v. Hinrichs*, 90 Wis.2d 214, 279 N.W.2d 449, 453 (1979); *Vic Hansen & Sons, Inc.*, 203 N.W.2d at 732–33.

This principle is stated by the Wisconsin Supreme Court in *Vic Hansen & Sons, Inc.*, 203 N.W.2d at 731, as follows:

"The purpose of the Uniform Commercial Code is the protection of both the creditor and the debtor. Each party to the transaction has certain duties. The duty of the secured party in this instance was to obtain the best possible price it could obtain for the collateral for the benefit of the debtor. The secured party does not have to use 'extraordinary means' to accomplish this result. Ordinarily, proof that the price obtained was the fair market value thereof would be sufficient." [Footnote omitted].

---

**6.** Section 41–09–53(1), N.D.C.C. (U.C.C. § 9–507(1)), reads as follows:

"1. If it is established that the secured party is not proceeding in accordance with the provisions of this part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten percent of the principal amount of the debt or the time price differential plus ten percent of the cash price."

**7.** 9 Anderson, *supra*, § 9–507:3, at 826, reads as follows:

"§ 9–507:3. Scope and suggestions.

"UCC § 9–507 declares the remedies available against a secured party who fails to observe the provisions of the Code governing his conduct after default, and the extent of his liability for such conduct. The section also provides standards for determining whether the secured party has acted in a commercially reasonable manner.

"The debtor possesses the rights conferred by Article 9 even though no reference be made thereto in the security agreement." [Footnote omitted.]

The Bank in asserting that it made a prima facie showing that the tractor with dozer was sold in a commercially reasonable manner draws our attention to the following allegedly undisputed facts:

"1. Hewson voluntarily surrendered the tractor to the Bank (Appx 25);

"2. Hewson acknowledged his right to redeem the tractor within ten days, but did not redeem the tractor (Appx 14);

"3. Hewson agreed that the tractor would be sold to the highest bidder if he did not exercise his right to redeem (Appx 14);

"4. Hewson agreed to be responsible for any deficiency after the sale of the tractor (Appx 14);

"5. Hewson was notified of the time and place of the sale (Appx 16, 17, 18);

"6. several hundred people attended the auction sale (Appx 16 and 58);

"7. the auction was conducted by a licensed auctioneer (Appx 27);

"8. the tractor was advertised as the third item on the sale ad, and the published notice also advised that 'most merchandise new or like new' (Appx 27);

"9. the sale was advertised in the only two papers published in the county of Hewson's residence (Appx 55);

"10. the tractor was sold to the highest bidder for $8,700.00 (Appx 16);

"11. the Bank credited Hewson's account with the net sales proceeds (Appx 16, 4); and

"12. comparable equipment sold six months later at a public auction brought only $8,000.00 (Appx 56)."

The Bank concludes that "Hewson simply failed to present any evidence to overcome the Bank's prima facie showing."

The crux of Hewson's argument is that the tractor with dozer was sold below its fair market value because the sale was not conducted in a commercially reasonable manner. In his affidavit he attests:

"Rather than selling the tractor in the normal method and manner of disposing of farm equipment, the tractor was sold along with a bunch of boats and used snowmobiles. Attached to this Affidavit as Exhibit 'B' is a copy of an advertisement of the auction sale. The advertisement shows and reveals that:

"1. The tractor was the only piece of farm equipment offered for sale.

"2. All of the remaining property was recreational property.

"3. The sale was held in a cold, unheated building in the middle of winter at 6:30 p.m.

"4. Much of the property was old.

"The sale of the tractor in this manner and under these circumstances resulted in the tractor bringing less than $20,000.00 which was its fair market value.

"The advertisement also failed to show that the tractor had only 1800 hours on the engine, had excellent tires, was a four-wheel drive, and was in over-all good condition."

Section 41–09–53 provides that "[t]he fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." However, we believe that the issue is not whether a better price could have been obtained but rather whether or not the resale price of the tractor with dozer was fair and reasonable. Specifically, the issue is whether or not the Bank met its burden of showing that the resale price was the fair and reasonable value of the tractor with dozer. The Bank's assertion that comparable equipment was sold at public auction for a similar price is not sufficient to establish as a matter of law that $8,700.00, which was the resale price received, was the tractor and dozer's fair and reasonable value in light of Hewson's statement that the value of the tractor and dozer was $20,000.00. We noted in *Farmers State Bank of Leeds v. Thompson*, 372 N.W.2d 862, 868 (N.D.1985), "that it is a general rule in this State that the owner of property, both real and personal, is fully competent to testify as to the property's value."

While the disparity between the price received at the auction and the estimated value of the tractor is not dispositive, it is an important factor in determining whether or not the collateral was sold

in a commercially reasonable manner. See *Conrad Publishing Co.*, 589 F.2d at 954; *Smith v. Daniels*, 634 S.W.2d 276, 278 (Tenn.Ct.App.1982).

We believe that this disparity, taken in connection with Hewson's other statements in his affidavit which are supported by the newspaper advertisement, raises an issue of fact which should have been submitted to a jury rather than being decided by the court as a matter of law. *Advanced Irrigation, Inc.*, 366 N.W.2d at 786; *All-American Sub, Inc.*, 289 N.W.2d at 780.

We conclude whether or not the tractor and dozer were sold in a commercially reasonable manner presents a genuine issue of material fact that precludes summary judgment.

For the reasons stated herein, the summary judgment of the district court is reversed and the case is remanded for further proceedings.[8]

GIERKE, MESCHKE and LEVINE, JJ., concur.

VANDE WALLE, Justice, concurring in result.

I concur in the result reached in the majority opinion. Because it might appear that the secured party's obligation is the same whether or not that party gives notice of sale to the debtor, and although they are interrelated concepts, I write separately to emphasize the perhaps fine distinction between the duty to rebut the presumption which arises when no notice of sale is given as required by Section 41–09–50(3), N.D.C.C., and the burden of proving that every aspect of the sale is commercially reasonable within the meaning of that provision, even when notice is given by the secured party.

In *State Bank, Etc. v. All-American Sub, Inc.*, 289 N.W.2d 772 (N.D.1980), we held that when a secured party fails to give notice of sale as required by statute, it will be presumed the collateral had a fair market value equal to the amount of the debt and no deficiency will be allowed unless the creditor overcomes this presumption by producing evidence that the fair market value of the collateral was less than the outstanding debt. In so concluding we indicated that the failure to give notice shifts to the secured party the burden of proving that the sale resulted in the fair and reasonable value of the property being credited to the debtor's account. But this "shifting of the burden" is a burden to rebut the presumption which results as a failure to give notice of sale and requires the secured party to prove the sale resulted in the fair and reasonable value of the property being credited to debtor's account. Contrary to American State Bank's position, neither *All-American Sub* nor *State Bank of Towner v. Hansen*, 302 N.W.2d 760 (N.D. 1981), which relied thereon, held that the *giving* of the required notice of sale *creates* a presumption that every aspect of the sale was commercially reasonable. Thus the presumption which arises as a result of a failure to give notice and which creates a burden on the secured party to rebut, is not inconsistent with a burden on the part of the secured party who gives notice to prove, absent any presumptions, that every aspect of the sale was commercially reasonable. Proving fair and reasonable value obtained is one aspect of proving the sale was commercially reasonable. Therefore, the secured party who gives notice of sale to the debtor must prove that every aspect of the sale was commercially reasonable, as does the secured party who does not give such notice. However, the secured party who does not give notice must, in addition, rebut the presumption that the collateral had a fair market value equal to the amount of the debt, and thus has a greater burden of proof.

---

8. In deciding this appeal we have not considered Hewson's contention that he did not redeem the tractor and dozer or attempt to protect himself at the bidding because he in effect had been promised that he would be protected to the amount of $20,000.00. This is a matter which may arise on remand at the trial and will no doubt involve the issues of the Statute of Frauds and the Parol Evidence Rule. Hopefully, if that matter arises and this case is again appealed those issues will be fully briefed.