No. 97-583

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 327

AUTO CREDIT, INC.,

Plaintiff and Respondent,

v.

DARRO N. LONG, a/k/a DARRO AND TRACY LONG,

Defendants and Appellants.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

D. Michael Eakin, Montana Legal Services; Billings, Montana

For Respondent:

Peter T. Stanley, Attorney at Law; Billings, Montana

Submitted on Briefs: May 14, 1998

Decided: December 30, 1998

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶1. The plaintiff, Auto Credit, Inc., filed a complaint in Yellowstone County Justice Court to recover a deficiency against the defendants, Darro and Tracy Long, after its sale of a car which Longs had purchased by a retail installment contract and returned to Auto Credit. Following entry of judgment for Auto Credit, Longs appealed to the District Court for the Thirteenth Judicial District in Yellowstone County. After both parties moved for summary judgment, the District Court granted in part and denied in part each of their motions and entered the judgment in favor of Auto Credit from which Longs appeal. We reverse the judgment of the District Court.**

**¶2. The sole issue on appeal is whether the District Court erred when it held that the sale of the vehicle repossessed from Longs was commercially reasonable.**

FACTUAL BACKGROUND

**¶3. On April 27, 1992, Darro and Tracy Long purchased a 1980 Ford Escort for $2795 from Auto Credit, Inc. They made a cash down payment of $300 and financed the balance of the purchase price. The terms of the financing required Longs to pay $38.84 for eighty-four weeks. Longs made six timely payments for the vehicle. On June 17, 1992, however, Longs notified Auto Credit that they intended to make no further payments, and they returned the vehicle to Auto Credit.**

**¶4. The car was in virtually the same condition, with the exception that they had driven it 3500 miles. The balance due for the vehicle at the time was $2594.02. On June 17, 1992, Auto Credit notified Longs that if they failed to pay the remainder of the balance within ten days, the car would be sold at a private sale on the next business day after June 27, 1992. However, the car was not sold until August 12, 1992, at which time it was sold at the Billings Auto Auction for $150. After Auto Credit deducted $229.47 for its expenses from the sale and finance charges, an additional $79.47 was charged to Longs' account.**

**¶5. Auto Credit filed an action in the Justice Court to recover a deficiency of $2934.15. Longs filed a counterclaim to recover damages on the basis that the sale was unreasonable pursuant to the UCC, and that it violated federal truth in lending law. After a judgment was entered in Justice Court, Longs appealed to the District**

**Court.**

**¶6.** On September 1, 1995, both parties moved for partial summary judgment. The issues raised included whether Auto Credit had given proper notice of the sale to Longs; whether the car had been sold in a commercially reasonable manner; and whether the financing had violated federal truth in lending law. After a hearing, the District Court granted Auto Credit's motion for summary judgment in part, finding that it had given proper notice of sale and that the sale had been commercially reasonable. It denied Longs' motion for summary judgment on those issues, but held by summary judgment that Auto Credit had violated federal truth in lending law. Pursuant to its order, the District Court entered judgment against Longs, but offset the amount by $1000 as a result of its conclusion that federal truth in lending law had been violated. The parties eventually stipulated to an amount for which judgment could be entered, and this appeal followed.

## DISCUSSION

**¶7.** Did the District Court err when it held that the sale of the vehicle repossessed from Longs was commercially reasonable?

**¶8.** Our standard of review of appeals from summary judgment is *de novo*. *See Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. We consider whether the order of the district court is correct as a matter of law. *See Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264-65, 900 P.2d 901, 903. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party has presented evidence that it is entitled to judgment as a matter of law. *See* Rule 56, M. R.Civ.P.; *Bruner*, 272 Mont. at 264-65, 900 P.2d at 903.

**¶9.** Section 30-9-504, MCA, governs a secured party's right to dispose of collateral after a default. It requires that "every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable." Section 30-9-504 (3)(a), MCA. Here, Longs contend that a number of elements of the sale made it commercially unreasonable, such as the price at which the car sold, the notice that they received, and the final accounting. Auto Credit, on the other hand, contends that, based on the affidavit of its general manager, commercial reasonableness was uncontroverted and it was entitled to judgment as a matter of law.

¶10. The burden of proving that the sale of repossessed collateral is commercially reasonable rests on the seller. *See Lilly v. Terwilliger* (1990), 244 Mont. 93, 100, 796 P.2d 199, 203; *Bank of Sheridan v. Devers* (1985), 217 Mont. 173, 176, 702 P.2d 1388, 1390; *Farmers State Bank v. Mobile Homes Unltd.* (1979), 181 Mont. 342, 347, 593 P.2d 734, 737. However, we have also held that when a party contends that a sale is commercially unreasonable on the basis of a large price discrepancy, the complaining party has the burden to prove that the price received is less than the fair market value. *See Lilly*, 244 Mont. at 100, 796 P.2d at 204; *Dulan v. Montana Nat'l Bank* (1983), 203 Mont. 177, 186, 661 P.2d 28, 32.

¶11. We have held that a low price, by itself, will not establish that a sale was commercially unreasonable. *See* § 30-9-507(2), MCA; *see also Lilly*, 244 Mont. at 100, 796 P.2d at 203-04; *Dulan*, 203 Mont. at 184-85, 661 P.2d at 31-32. Rather, the reasonableness of a sale is to be determined on a case-by-case basis, and should take into consideration the totality of the circumstances. *See, e.g., GECC Fin. Corp. v. Jaffarian* (Haw. Ct. App. 1995), 904 P.2d 530, 538; *Security Fed. Sav. & Loan v. Prendergast* (N.M. 1989), 775 P.2d 1289, 1291; *Security State Bank v. Broadhead* (Utah 1987), 734 P.2d 469, 472.

¶12. Many jurisdictions have found that a secured party has an express obligation to protect a debtor's interests. *See, e.g., First Westside Bank v. For-Med, Inc.* (Neb. 1995), 529 N.W.2d 66, 70 (noting that secured party's duty to debtor to use all fair and reasonable means to obtain best price under circumstances does not require the use of extraordinary means); *Prendergast*, 775 P.2d at 1291 (citing a good faith duty to the debtor); *American State Bank of Killdeer v. Hewson* (N.D. 1987), 411 N.W.2d 57, 61 (referring to the secured party's duty to act in good faith with due diligence, reasonableness, and care); *Chrysler Dodge Country, U.S.A., Inc. v. Curley* (Utah Ct. App. 1989), 782 P.2d 536, 541 ("It is the duty of the secured party to obtain the best possible price for the benefit of the debtor."). While this Court has not expressly held that a secured party must, as a matter of law, protect the debtor when it conducts a disposition sale, we do conclude that collateral cannot be disposed of, as it was in this case, in total disregard of the debtor's interests.

¶13. Based on the unique facts in this case, we conclude that they permit only one reasonable interpretation. In order to assess a reasonable fair market value for the vehicle we need only look to the value that Auto Credit, which admitted to being involved in dozens of these types of transactions, was willing to assign it when it made

the original financing arrangement. The fact that Auto Credit secured the $2795 transaction with the vehicle as collateral serves effectively as an admission by Auto Credit of the vehicle's worth in April.

¶14. There is nothing in the record to suggest that the vehicle's value diminished due to a mechanical problem, nor has either party suggested that the 3500 miles that Longs added to the vehicle devalued it by ninety-five percent. Therefore, based upon the facts before the District Court, we conclude that $150 did not represent reasonable fair market value for the vehicle repossessed from Longs.

¶15. When we consider the additional fact that following the sale Longs owed more to Auto Credit than they did before the sale, we necessarily conclude that the sale was not commercially reasonable. As contended by Longs, they would have been better off destroying the collateral than they were for returning it. This result would be inconsistent with the UCC's requirements that repossessed collateral be disposed of in a manner that takes into consideration the interests of both parties.

¶16. While we will continue to hold in the majority of cases that no single factor is determinative of whether a sale is commercially reasonable, we recognize that the most significant interest of the debtor is the price obtained at sale. If a secured party fails to give the required notice, the detriment to the debtor will depend on the price obtained at sale. No amount of notice, however, will compensate for a grossly inadequate price at sale. Therefore, depending on the facts of a given case, the price received at resale may provide *prima facie* evidence of whether the sale was reasonable and protected the interests of the debtor.

¶17. For the reasons stated above, we reverse the District Court's order granting summary judgment to Auto Credit. We conclude that the sale in question was not commercially reasonable and remand this case to the District Court for proceedings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART