No. 00-173

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 153

300 Mont. 123

2 P. 3d 834

SAFECO INSURANCE COMPANY OF ILLINOIS,

Petitioner,

v.

MONTANA EIGHTH JUDICIAL DISTRICT

COURT, CASCADE COUNTY,

HONORABLE THOMAS M. McKITTRICK, presiding,

Respondent.

ORIGINAL PROCEEDING: Supervisory Control

COUNSEL OF RECORD:

For Petitioner:

Robert J. Phillips, Phillips & Bohyer, Missoula, Montana

For Respondents:

Roland B. Durocher, Hartelius, Ferguson, Baker & Kazda, Great Falls, Montana (Pete Hill); Lot T. Holden, Jardine, Stephenson, Blewett & Weaver, Great Falls, Montana (Judith L. Bennett)

Submitted: March 23, 2000

Decided: June 8, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 This is an original proceeding in this Court involving an application for a writ of supervisory control. The Petitioner, Safeco Insurance Company of Illinois (Safeco), one of the defendants in the underlying action, seeks review of the District Court's February 2, 2000 order, which granted summary judgment in favor of the Plaintiff, Pete Hill (Hill) on his declaratory judgment claim against Safeco. Safeco contends that in doing so, the court incorrectly interpreted current law governing an insurer's obligation to pay medical expenses incurred by an injured third party claimant in advance of final settlement or judgment.

¶2 We assume supervisory control, and affirm the District Court's order granting summary judgment in favor of Hill.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The parties agree that on April 6, 1998, a motor vehicle collision occurred between a vehicle driven by Safeco's insured, Judith Bennett (Bennett) and a vehicle in which Hill was a passenger. It is undisputed that Bennett admits that her negligence caused the accident, and that Safeco was her liability insurer at the time. Hill suffered injuries as a result of the accident, and initially incurred medical expenses of approximately $15,000, a figure which he asserted in a statement of claim filed with the court in April of 1999.

¶4 Although Safeco apparently paid some of Hill's initial medical claims--according to Hill's July 7, 1999 affidavit--it eventually disputed the causal relationship between the accident caused by its insured and Hill's claimed injuries. It refused to pay any medical

bills submitted for payment by Hill that were incurred beyond December 1, 1998.

¶5 Hill filed suit on March 10, 1999, against Bennett for negligence damages, as well as against Safeco under three separate counts for its nonpayment of medical expenses. In part, Hill sought a declaratory judgment that he was legally entitled to advance payment of medical costs under Bennett's policy with Safeco prior to settlement or a final judgment, because Bennett's liability was reasonably clear. He asserted that such a declaratory judgment would be proper pursuant to Montana's Unfair Trade Practices Act (UTPA), as well as this Court's 1997 decision construing the Act, *Ridley v. Guaranty Nat'l Ins. Co.* Hill moved for summary judgment on this declaratory judgment claim on July 7, 1999.

¶6 Hill also brought an UTPA claim and a common law claim of bad faith against Safeco. The two counts were dismissed, however, by an order issued by the court on May 12, 1999, pursuant to a stipulation by the parties. On September 14, 1999, the court also granted Safeco's request to separate trials regarding Hill's negligence claim against Bennett and his declaratory judgment claim against Safeco.

¶7 In support of his motion for summary judgment, Hill asserted that all of his medical claims made to date were causally related to the accident. Hill relied primarily upon the affidavit of his primary treating physician, Dr. Ronald Peterson. Dr. Peterson's affidavit attested that "to a reasonable degree of medical certainty" he believed that Hill's claimed injuries were sustained in, and were related to, the April 6, 1998 accident.

¶8 Safeco, on the other hand, relied on the affidavit of its hired consultant, Dr. A. Craig Eddy, who stated that after his review of Hill's medical records he could not "to a reasonable degree of medical certainty, make a causal connection between the April 6, 1998 car accident and Mr. Hill's continuing medical complaints." According to Hill's affidavit, he was never asked to submit to a medical examination by a doctor chosen or approved by Safeco. Additionally, Safeco contended that summary judgment in favor of Hill was inappropriate because any action--including a declaratory judgment--arising from an UTPA claim is expressly precluded from adjudication prior to a settlement or a judgment in the underlying action between the third-party claimant and the insured, pursuant to § 33-18-242(6)(b), MCA.

¶9 The District Court, in issuing summary judgment in favor of Hill, noted that "nowhere in his affidavit does Dr. Eddy contradict the affidavits of Plaintiff or Dr. Peterson." Therefore, the court concluded that "the material facts as alleged by Plaintiff are not in

dispute." The court further determined that "[b]ecause this action does not directly seek bad faith damages for a violation of the Unfair Trade Practices Act, there is no statutory bar under Mont. Code Ann. § 33-18-242(6)(b)."

¶10 The District Court ordered that Safeco "must advance the medical expenses Mr. Hill has incurred as a result of his injuries sustained in the wreck with Judith Bennett." The court specifically ordered that Safeco pay "the amount of Mr. Hill's medical expenses for treatment rendered from the date of the accident through November 1, 1999." The court further provided, however, that Safeco may nevertheless raise "reasonable defenses" as to the "validity for any expenses for treatment after that date."

¶11 From this order, Safeco seeks this Court's review pursuant to its petition for supervisory control.

## STANDARD OF REVIEW

¶12 Generally, our standard of review of a district court's summary judgment order is de novo. *See Auto Credit, Inc. v. Long,* 1998 MT 327, ¶ 8, 292 Mont. 238, ¶ 8, 971 P.2d 1237, ¶ 8. In this instance, however, the District Court determined there were no significant factual issues and granted summary judgment to Hill based on its interpretation of the law. The parties concede that no genuine issues of fact remain. Accordingly, we will narrow our review to determine whether the moving party, Hill, was entitled to judgment as a matter of law. *See Nimmick v. State Farm Mut. Auto. Ins. Co.* (1995), 270 Mont. 315, 319, 891 P.2d 1154, 1156. Our standard of review pertaining to a district court's conclusions of law, in rendering a declaratory judgment, is to determine if the court's interpretation of the law is correct. *See Ash Grove Cement Co. v. Jefferson County* (1997), 283 Mont. 486, 491, 943 P.2d 85, 89.

## DISCUSSION

### I. Propriety of Supervisory Control

¶13 District Court's February 2, 2000 order granting Hill summary judgment would be an inadequate remedy. Safeco sets forth a scenario whereby a jury may eventually find its insured, Bennett, not liable for some or all of Hill's medical expenses. In turn, Safeco may have already paid Hill some of these expenses pursuant to the court's order granting summary judgment. This "procedural paradox," as characterized by Safeco, is a direct

result of the District Court's legal error in refusing to stay Hill's declaratory judgment until either a settlement had been reached or a judgment had been entered, which is required under § 33-18-242(6)(b), MCA.

¶14 Article VII, Section 2, of the Montana Constitution gives this Court "original jurisdiction to issue, hear, and determine writs . . . ." The exercise of supervisory control by this Court is also authorized by Rule 17(a), M.R.App.P. Supervisory control is appropriate when a district court is proceeding under a mistake of law and in so doing is causing a gross injustice for which an appeal is not an adequate remedy. *See State v. Montana Judicial Dist. Court* (1997), 281 Mont. 285, 290-91, 933 P.2d 829, 832-33 (citations omitted). Our determination of whether supervisory control is appropriate is a case-by-case decision. *See Park v. Sixth Jud. Dist. Court*, 1998 MT 164, ¶ 13, 289 Mont. 367, ¶ 13, 961 P.2d 1267, ¶ 13 (citations omitted). It remains an extraordinary remedy, however, exercised only in extraordinary circumstances. *See State v. Fourth Jud. Dist. Court* (1996), 277 Mont. 349, 352, 922 P.2d 474, 476 (citations omitted).

¶15 Here, we conclude that Safeco's application presents a legal issue which is appropriate for this Court to resolve through a writ of supervisory control. As explained by Safeco, should the ordered payment of medical expenses be incorrect, or a "mistake of law," the delay in awaiting the outcome of the corollary litigation that will determine damages could create an unfair prejudice for Safeco. Likewise, any further, unnecessary delay in the payment of Hill's medical costs--if the court's summary judgment was appropriate--would certainly prejudice Hill. Safeco contends that an appeal brought at some point in the future, as compared with a resolution of this matter now, would be inadequate. We agree.

¶16 We recognize, however, that due to the September 14, 1999 order for separate trials which followed Hill's July 7, 1999 motion for summary judgment, the granting of summary judgment on February 2, 2000, was not, technically speaking, "interlocutory." *See generally Cechovic v. Hardin & Assoc., Inc.* (1995), 273 Mont. 104, 118, 902 P.2d 520, 528 (stating general rule that summary judgment orders are interlocutory and therefore not appealable until final judgment is rendered) (citation omitted); *Knight and Co. v. Fort Belknap Indian Agency* (1980), 188 Mont. 218, 220-21, 612 P.2d 1290, 1291-92 (concluding that appeal must be dismissed without prejudice under Rule 1, M.R.App. P., where order of summary judgment is interlocutory). Although the trial court did not certify the summary judgment as final, under Rule 54(b), M.R.Civ.P., there was nothing preventing Safeco, if it chose to do so, from directly appealing the order of the District Court.

¶17 Nevertheless, this Court has determined that where an appeal is not "an adequate remedy because of the time necessarily involved," the relief of an aggrieved party should properly be pursued through a writ of certiorari, habeas corpus, or supervisory control. *See Matter of K.H.* (1985), 216 Mont. 267, 268, 701 P.2d 720, 721 (treating appeal as a writ of certiorari). In light of the central issue--the timely payment of medical claims--Hill does not resist our review of this matter. Specifically, he requests that this Court accept jurisdiction "for the purpose of clarifying and enforcing the law so that he is not further prejudiced by Safeco's ongoing delay tactics."

¶18 Accordingly, Safeco's application for a writ of supervisory control is granted.

## II. Issue Presented

*Can a plaintiff litigate a declaratory judgment claim against an insurer for advance payment of medical expenses prior to the final settlement or judgment on the underlying claim against an insured?*

¶19 The issue raised by Safeco's application for supervisory control revisits the issues addressed in this Court's decision, *Ridley v. Guaranty Nat'l Ins. Co.* (1997), 286 Mont. 325, 951 P.2d 987. In that case, this Court decided that when certain criteria are met, an insurer must pay an injured third-party claimant's medical expenses prior to final settlement. *See Ridley*, 286 Mont. at 334, 951 P.2d at 992. We concluded that Montana's Unfair Trade Practices Act, specifically subsections (6) and (13) of § 33-18-201, MCA, imposed an obligation on insurers to pay an injured third party's medical expenses--which were provided for under its insured's policy--prior to final settlement when liability is reasonably clear. *See Ridley*, 286 Mont. at 334, 951 P.2d at 992.

¶20 In this instance, the court followed *Ridley* and determined that Bennett's liability was reasonably clear--she admitted to negligence in her Answer. The court concluded that no material facts were in dispute concerning the causal relationship between the accident and Hill's medical claims, because Safeco's lone piece of evidence, the affidavit of Dr. Eddy, did not contradict material facts. Therefore, Safeco--given an ample opportunity to do so-- could not establish a reasonable basis for denial of the payment. Under the circumstances, the court determined that Safeco must, as a matter of law, pay those medical bills no longer in dispute in advance of settlement or judgment. In doing so, the court acknowledged that this would "terminate the controversy or remove uncertainty," as required by the statutes governing declaratory judgments.

¶21 Before proceeding, we first find it necessary to address a portion of Safeco's argument, which suggests that the question here is actually "whether an insurance company can be forced to defend its decision on the advance pay issues *before its insured's liability for those expenses has been established*" (emphasis added).

¶22 We agree with Safeco that Montana law does not allow a plaintiff to bring a direct action against an insurer until the liability of the insured has been established, unless such a right is "expressly sanctioned by the legislature and not merely inferentially deduced." *See*, *e.g.*, *Ulrigg v. Jones* (1995), 274 Mont. 215, 224-25, 907 P.2d 937, 943 (citations omitted). How this principle is relevant in this matter, however, is unclear.

¶23 In her answer, Bennett admitted to committing negligence--i.e., breaching a duty--as far as the accident was concerned, stopping short of admitting liability for any or all of Hill's claimed injuries. That her negligence was in turn the *cause* of those injuries initially claimed by Hill was determined by the District Court following the submission of affidavits by both parties attesting to the causal relationship between the accident and Hill's medical claims.

¶24 Thus, the District Court determined that the only matter reserved for trial would be damages, which may or may not include damages in excess of the medical expenses at issue here. Nevertheless, Bennett is liable for injuries resulting from the accident, a portion of which are no longer in dispute, and the remainder of which remain to be proven by Hill.

¶25 Whether Safeco, as a matter of law, must pay for that undisputed portion, and only that portion, in advance of settlement or judgment is the issue before this Court. Safeco's repeated assertions that Bennett's "liability" is somehow still at issue is therefore without merit and will be disregarded.

¶26 Aside from the foregoing diversion, Safeco has carefully narrowed its summary judgment arguments here to the focal issue of whether the language of § 33-18-242(6)(b), MCA, under Montana's Unfair Trade Practices Act, requires that Hill's declaratory judgment must be stayed until after the settlement or final adjudication of his claim against Safeco's insured. The application of this statute, Safeco correctly points out, was not at issue or discussed in *Ridley*.

¶27 Section 33-18-242(6)(b), MCA, provides that a "third-party claimant may not file an action under this section until after the underlying claim has been settled or a judgment

entered in favor of the claimant on the underlying claim." *See Poteat v. St. Paul Mercury Ins. Co.* (1996), 277 Mont. 117, 120, 918 P.2d 677, 679 (stating that a district court does not have subject matter jurisdiction over such an UTPA claim until final settlement or judgment is achieved). Thus, according to Safeco, the District Court failed as a matter of law to abide by the mandate of § 33-18-242(6)(b), MCA, by determining that Hill could properly enforce a right provided by the UTPA, in an action seeking advance payments on his medical claims prior to the settlement or adjudication of his negligence claim against Bennett.

¶28 As we recently explained in *Fisher v. State Farm Gen. Ins. Co.*, however, section 33-18-242(1), MCA, expressly provides that an UTPA claim against an insurer is an independent cause of action *See Fisher*, 1999 MT 308, ¶ 16, 297 Mont. 201, ¶ 16, 991 P.2d 452, ¶ 16. We agree with Safeco that a third-party claimant who wishes to bring such an independent action under UTPA is required, by statute, to wait until "after the underlying claim has been settled or a judgment [is] entered in favor of the claimant on the underlying claim." *See generally Peris v. Safeco Ins. Co.* (1996), 276 Mont. 486, 491-92, 916 P.2d 780, 784 (discussing legislative intent of subsection (6)(b)). The language of the statute itself provides the underlying reasoning. Only those third-party claimants who are able to achieve a settlement or prevail at trial may, in turn, bring an UTPA action-- meaning meritless UTPA claims are theoretically extinguished before a claim is ever filed. This provision serves to both protect insurers from frivolous claims and facilitate judicial economy.

¶29 Safeco's brief provides little assistance in our search for sound legal authority, however, that the District Court incorrectly concluded that subsection (6)(b) does not apply to Hill's declaratory judgment action, and that the court therefore erred as a matter of law by not staying the proceedings. Rather, Safeco's position is premised on the imaginative reasoning that Hill's declaratory judgment action is nothing more, really, than an UTPA claim under a different name. For example, on page 10 of its brief, Safeco argues that Hill's declaratory judgment claim against Safeco "arises" under § 33-18-242(1), MCA, and this Court's holding in *Ridley*. We will not dispute this. Hill requested that the court apply the governing law as expressed in *Ridley* and under UTPA in determining the parties' legal status and rights respecting Bennett's insurance policy with Safeco, and Hill's status as an innocently injured third-party claimant. By page 14, however, Hill's declaratory judgment claim is interestingly transformed into an actual "UTPA claim against Safeco." By page 15, Hill's claim ripens into a bona fide "bad faith case." Then, Safeco reaches its conclusion by claiming that Hill could not bring "his *claim* against

Safeco until he settles or adjudicates his underlying *claim* against Safeco's insured," as required of *all UTPA claims* under § 33-18-242(6)(b), MCA, (emphasis added).

¶30 Noticeably absent from this slight-of-hand chronology is the fact that as a result of Safeco's own motion before the District Court, Hill's UTPA and common law bad faith claims were dismissed pursuant to the parties' stipulation. Accordingly, the District Court did not award damages for bad faith, or an unfair trade practice. Rather, the court simply instructed Safeco to pay those medical expenses provided for under Bennett's policy that were no longer in dispute--those that Hill had incurred up to November 1, 1999. Beyond that date, the court clearly afforded Safeco the right to "raise reasonable defenses, which can be substantiated with a clearly stated, good faith argument. . . ." Further, the court correctly omitted any determination regarding Hill's claim to lost wages, which clearly falls outside the scope of our decision in *Ridley*. In every respect, the court narrowly tailored its declaratory judgment to those medical expenses that, under *Ridley*, a third-party claimant is unequivocally entitled to prior to settlement or entry of judgment.

¶31 The purpose of the Declaratory Judgment Act, after all, is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Section 27-8-102, MCA. While the focus of the Act is on construing rights under written instruments, *see* § 27-8-202, MCA, a court is not restricted in "any proceeding where declaratory relief is sought in which a judgment or decree will terminate the controversy or remove an uncertainty." Section 27-8-205, MCA. Thus, a court has the liberal discretion to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 27-8-201, MCA.

¶32 In accordance with the foregoing statutory language, the declaratory judgment sought by Hill, in theory, actually removed the necessity of his pursuing a *Ridley*-based UTPA claim. Indeed, Hill did in fact pursue such a claim, insisting that it would be an unfair trade practice for Safeco to withhold advance payment of Hill's medical claims in light of this Court's decision in *Ridley*. In turn, this claim no doubt would have led to a lengthy dispute over the underlying facts of the parties' respective conduct.

¶33 Where an insurer's duties turn on a question of law, however, especially where those duties have been previously and conclusively determined by either the Legislature or this Court, such a protracted affair would be imprudent from both parties' standpoints, in that the cost of litigation could certainly be reined in by a declaratory judgment that produces the same result. In fact, such a tactical decision is routinely made by insurers. *See*, *e.g.*, *St.*

*Paul Fire & Marine Ins. Co. v. Cumiskey* (1983), 204 Mont. 350, 358, 665 P.2d 223, 227 (discussing insurers' use of declaratory judgment to obtain a determination of the validity, continuance, or coverage of an insurance policy; a determination of the extent of liability; or a determination of the insurer's duties under the policy). In this sense, Safeco should be grateful that what amounts to a question of law could be resolved in such an efficient manner--especially in light of the potential for awarding the successful third-party claimant far more than the actual medical costs under Montana's UTPA.

¶34 We therefore affirm the District Court's conclusion that because Hill's declaratory judgment claim did not directly seek bad faith damages for a violation of the UTPA, there was no statutory bar under § 33-18-242(6)(b), MCA. In doing so, we again emphasize that the District Court did not determine that Safeco violated UTPA, or acted in bad faith, or that the ordered payment of advance medical expenses constitutes a money judgment for "damages" in the ordinary sense. To the contrary, the District Court merely removed all uncertainty and controversy over the issue of *when* the inevitable policy proceeds are due.

¶35 The judgment of the District Court is affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

Justice Karla M. Gray, dissenting.

¶36 While I do not disagree with the Court's analysis of the substantive legal issue presented in this application for a writ of supervisory control, I would not reach that issue because this case does not meet the test pursuant to which we exercise supervisory control.

In my view, we must maintain that test--and apply it consistently--lest we become so overwhelmed by original proceedings such as this that we are unable to address cases on appeal in any relatively expeditious way. Accordingly, I respectfully dissent from the Court's exercise of supervisory control in this case.

¶37 The Court states that supervisory control is appropriate when a district court is proceeding under a mistake of law and in so doing is causing a gross injustice for which an appeal is not an adequate remedy. It goes on to observe that, even under that test, supervisory control is an extraordinary remedy exercised only in extraordinary circumstances. I could not agree more. Having properly stated the applicable principles, however, the Court fails to apply them.

¶38 In the first instance, it is clear from the Court's analysis of the substantive legal issue that the District Court was not "proceeding under a mistake of law." Since the test for supervisory control is stated in the conjunctive by use of the word "and"--that is, both prongs of the test must be met--this should end our inquiry about whether to accept this case and exercise our supervisory control jurisdiction.

¶39 Even ignoring the conjunctive nature of the test, however, no gross injustice is being caused by the District Court's order on summary judgment. As the Court states, Safeco's argument in this regard is that--*if* the District Court is *incorrect* as a matter of law--delay in awaiting the outcome of the corollary litigation *could* create unfair prejudice against Safeco. This is a far cry from the requirement of the second prong of the test, which is "causing gross injustice for which an appeal is not an adequate remedy."

¶40 Nor is the Court correct in suggesting that there would be further delays in the payment of Hill's medical costs--in the event the District Court was *correct* as a matter of law--which "would certainly prejudice Hill." In granting Hill's motion for summary judgment, the trial court ordered that Safeco "*shall* pay . . . Hill's medical expenses for treatment rendered from the date of the accident through November 1, 1999." Under that order, it is clear that Safeco must pay those expenses at this time, not at some time in the future. Thus, there can be no further delays in those payments and no prejudice to Hill.

¶41 Finally, I do not follow the Court's logic or analysis in ¶¶ 16 and 17. There, the Court states that the order granting summary judgment was not, technically speaking, interlocutory and Safeco could have taken a direct appeal from that order. It cites to no authority for this proposition and I am aware of none. Moreover, if the order was

appealable, it should have been appealed rather than raised via this original proceeding.

¶42 It is clear that both parties to the underlying case want this Court to resolve the substantive legal issue at this time. That fact, however, has no bearing on whether our test for exercising supervisory control is met. It also is clear that the Court is interested in addressing the substantive legal issue at this time. That, too, should have no bearing on whether our test for exercising supervisory control is met. Here, there is no error of law which is causing a gross injustice for which an appeal is not an adequate remedy. Nor is this a case involving extraordinary circumstances calling for the extraordinary remedy of supervisory control.

¶43 By its action here, it is my view that the Court has unnecessarily blurred the lines between appeals and applications for supervisory control and has obliterated any test for exercising supervisory control. In essence, it has decided that, while continuing to state the requirements to be met before supervisory control will be exercised, it will accept any application for supervisory control involving an issue it wants to address immediately. Parties litigant in ordinary appeals will feel the impacts of the Court's decision today, as we invite unlimited applications for supervisory control which consume more and more of our time. Trial courts will feel the impacts doubly: 1) as more and more of their cases, long scheduled and moving toward trial, are disrupted by applications for supervisory control; and 2) by having rulings which may have become moot by further proceedings raised and resolved in this Court on supervisory control.

¶44 I cannot join in this course of action. I dissent from the Court's decision to exercise supervisory control in this case.

/S/ KARLA M. GRAY