No. 02-795

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 65

TEDDY ANN O'CONNOR,

       Plaintiff,

   v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

       Defendant and Cross-Plaintiff,

   v.

ALEXSIS, INC.,

       Third-Party Defendant.

ORIGINAL PROCEEDING:    Certified Question from The United States
Court  of Appeals for the Ninth Circuit,
Docket No. 01-35367

COUNSEL OF RECORD:

    For Petitioner:

        Sharon M. Morrison, Frank B. Morrison, Jr. (argued),
        Morrison & Frampton, Whitefish, Montana

    For Defendants:

        L.D. Nybo and Allen P. Lanning (argued), Conklin, Nybo &
        Lanning, Great Falls, Montana (for National Union Fire Insurance
        Company of Pittsburgh, PA)

        Charles E. McNeil (argued), Garlington, Lohn & Robinson,
        Missoula, Montana (for Alexsis, Inc.)

Argued:  July 17, 2003
Submitted:  August 12, 2003
Decided:  March 23, 2004

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1      By order dated December 26, 2002, and pursuant to Rule 44, M.R.App.P., the United States Court of Appeals for the Ninth Circuit certified two questions to this Court. We accepted the certified questions by order dated January 7, 2003. Pursuant to Rule 44(d), M.R.App.P., we reformulate and address the following certified question:

¶2      For statute of limitations purposes, do statutory and common law bad faith claims against an insurer, predicated on actions taken in the adjustment of a workers' compensation claim, accrue when the Montana Workers' Compensation Court enters a judgment which orders the insurer to pay for a previously denied benefit, but which leaves unresolved the ultimate determinations of the extent and duration of the worker's disability?

¶3      After briefing and oral argument by the parties, and for the reasons set forth below, we answer the question in the affirmative.

BACKGROUND

¶4      In August of 1993, Teddy Ann O'Connor (O'Connor) injured her back when she slipped and fell while working at the WalMart store in Billings, Montana. At the time of O'Connor's injury, National Union Fire Insurance Company of Pittsburgh, PA (National Union) insured WalMart against workers' compensation claims. National Union employed Alexsis, Inc. (Alexsis) to adjust O'Connor's claim.

¶5      O'Connor's original physician recommended against surgery to repair the damage to her back. She sought a second opinion and was referred to a neurosurgeon who

2

recommended surgery. O'Connor asked Alexsis for permission to continue treatment with the neurosurgeon and undergo the surgery, but Alexsis denied her request. O'Connor filed a claim with the Workers' Compensation Court (WCC) requesting various benefits, including that National Union pay for her back surgery. On May 19, 1995, the WCC determined that O'Connor had been temporarily totally disabled since March 16, 1994, and ordered National Union to pay for her surgery and lost wages since that date. Noting that O'Connor had not reached maximum healing, the WCC did not determine National Union's further liability and stated there was "a legitimate issue as to whether [O'Connor's] current condition is attributable to her 1993 fall."

¶6     In October of 1996, several months after her surgery, O'Connor filed an action against National Union in the United States District Court for the District of Montana, alleging National Union violated the Montana Unfair Trade Practices Act (MUTPA), §§ 33-18-101, MCA, *et seq*., in that it delayed her surgery in bad faith by denying her claim when liability was reasonably clear. National Union moved for summary judgment, arguing that the action was barred by the statute of limitations. The federal trial court denied the motion, but dismissed O'Connor's action without prejudice on the basis that it was filed prematurely. The court observed that the MUTPA prohibits a third-party claimant from filing an action against an insurer until the underlying claim is settled or reduced to judgment, and National Union's liability had not been fully determined.

¶7     In January of 2000, O'Connor filed a second action against National Union in the federal district court in reaction to our ruling in Brewington v. Employers Fire Ins. Co., 1999

3

MT 312, 297 Mont. 243, 992 P.2d 237, which she believed established that the underlying workers' compensation claim need not be resolved completely before a bad faith claim may be brought. She again alleged violations of the MUTPA, and added a common law bad faith claim. National Union filed a third-party complaint against Alexsis for indemnification. Both National Union and Alexsis filed motions for summary judgment, asserting that O'Connor's claims were barred by the applicable one-year and three-year statutes of limitations.

¶8 The federal district court interpreted Brewington as holding that, with regard to workers' compensation proceedings, an "underlying claim" included each WCC interim judgment, regardless of whether the claimant's ultimate disability had been determined. The court then concluded that the applicable statutes of limitations on O'Connor's claims arising out of the WCC's May 19, 1995, decision began to run at the time that decision was entered and, consequently, those claims were time barred when O'Connor filed her action in 2000. Based on that conclusion, the court granted summary judgment to National Union and Alexsis on those claims, and dismissed as premature O'Connor's bad faith claims occurring after May 19, 1995.

¶9 O'Connor appealed to the Ninth Circuit Court of Appeals from that portion of the federal district court's order which granted summary judgment to National Union and Alexsis. The Ninth Circuit then certified two questions to this Court and we reformulated them into one question.

DISCUSSION

4

¶10 For statute of limitations purposes, do statutory and common law bad faith claims against an insurer, predicated on actions taken in the adjustment of a workers' compensation claim, accrue when the WCC enters a judgment which orders the insurer to pay for a previously denied benefit, but which leaves unresolved the ultimate determinations of the extent and duration of the worker's disability?

¶11 A third-party claimant may not bring an action pursuant to the MUTPA "until after the underlying claim has been settled or a judgment entered in favor of the claimant on the underlying claim." Section 33-18-242(6)(b), MCA. Furthermore, the statute of limitations for an action brought by a third-party claimant pursuant to the MUTPA is "within 1 year from the date of the settlement of or the entry of judgment on the underlying claim." Section 33-18-242(7)(b), MCA. The MUTPA does not define the term "underlying claim."

¶12 A common law bad faith claim accrues "when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action." Section 27-2-102(1)(a), MCA. The statute of limitations for a common law bad faith claim is three years and begins to run "when the claim or cause of action accrues." Sections 27-2-204(1) and 27-2-102(2), MCA.

¶13 O'Connor argues that, for purposes of a MUTPA bad faith claim, the settlement of, or the entry of judgment on, the underlying workers' compensation claim does not occur until all issues contained in that claim–including the ultimate issues of liability, and extent and duration of disability–have been resolved. With respect to common law bad faith claims, she similarly argues that the cause of action does not accrue until all issues in the workers' compensation claim–including liability, and extent and duration of disability–have

5

been resolved. National Union and Alexsis contend that statutory and common law bad faith claims arising out of the handling of workers' compensation claims accrue at the time each individual dispute giving rise to the bad faith claim is resolved by settlement or WCC judgment, regardless of whether other issues remain in dispute in the workers' compensation case. National Union and Alexsis are correct.

¶14 We first discussed the accrual of a third-party bad faith claim against an insurer arising from conduct in the handling of a workers' compensation claim in Grenz v. Orion Group, Inc. (1990), 243 Mont. 486, 795 P.2d 444. In that case, Grenz suffered a work-related injury for which the insurer, Orion Group, Inc. (Orion), accepted liability and paid benefits. Grenz initially received temporary total disability benefits. After several years, Orion reduced Grenz's benefits to permanent partial disability. Grenz challenged the reduction and, eventually, the WCC restored his benefits to temporary total disability. Grenz, 243 Mont. at 487, 795 P.2d at 445-46. The WCC did not determine, however, whether Orion had acted unreasonably in reducing Grenz's benefits. Grenz subsequently brought an action in the district court alleging Orion had acted in bad faith in handling his workers' compensation claim. Orion moved to dismiss the action, asserting it was premature because the WCC had not determined whether Orion had acted unfairly. The district court granted the motion and Grenz appealed. Grenz, 243 Mont. at 488-89, 795 P.2d at 445-46.

¶15 On appeal, we observed that § 33-18-242(6)(b), MCA, provides that a third-party bad faith claim may not be brought until after there has been either a settlement of or judgment entered on the underlying claim. Grenz, 243 Mont. at 491, 795 P.2d at 447. We then

concluded the district court correctly determined that, until the WCC ruled on whether Orion's actions in reducing Grenz's benefits were improper, Grenz's bad faith action based on those actions was premature. We affirmed the dismissal of Grenz's complaint. Grenz, 243 Mont. at 490-91, 795 P.2d at 446-47. Thus, in analyzing whether Grenz's bad faith claim had accrued, we looked to whether the WCC had entered a judgment relating to the specific issue and conduct alleged in Grenz's district court bad faith complaint.

¶16 We next addressed this issue in Poteat v. St. Paul Mercury Ins. Co. (1996), 277 Mont. 117, 918 P.2d 677. There, Poteat suffered a work-related injury for which she filed a workers' compensation claim. Poteat and the insurer eventually entered into a settlement agreement wherein Poteat was to receive a lump sum payment and expressly reserve her claim to future medical benefits. Poteat, 277 Mont. at 118, 918 P.2d at 678. Poteat subsequently brought a MUTPA action in the district court, alleging various acts of bad faith on the part of the insurer both prior to and after entry of the settlement agreement, as well as breach of the settlement agreement. Poteat, 277 Mont. at 119, 918 P.2d at 678. The insurer moved to dismiss the complaint for lack of subject matter jurisdiction. The district court determined that, because the settlement agreement had not resolved the question of Poteat's future medical benefits, the agreement was not a full settlement of the underlying claim and, as a result, it had no jurisdiction over the bad faith action. On that basis, the court granted the insurer's motion to dismiss. Poteat, 277 Mont. at 119, 918 P.2d at 678-79.

¶17 On appeal, we determined that, with regard to the workers' compensation claim, Poteat's claims for compensation and past medical benefits were fully and finally settled

7

upon entry of the settlement agreement. As a result, her bad faith claims arising out of conduct prior to entry of the agreement accrued at that time, pursuant to § 33-18-242(6)(b), MCA, and Poteat could pursue a MUTPA claim with regard to that conduct. We reversed the district court's dismissal of those claims. Poteat, 277 Mont. at 120-21, 918 P.2d at 679-80. We also concluded, however, that Poteat's bad faith claims relating to conduct occurring after entry of the settlement agreement, including breach of the agreement itself, would not accrue until she obtained a settlement or WCC judgment resolving the issue of her future medical benefits. Poteat, 277 Mont. at 120, 918 P.2d at 679-80. Consequently, we concluded the district court correctly determined that Poteat's bad faith claims relating to conduct occurring after entry of the settlement agreement were premature and affirmed its dismissal of those claims. Poteat, 277 Mont. at 121, 918 P.2d at 680. As in Grenz, we resolved the issue of when the bad faith claims accrued by looking to whether there had been a settlement or judgment relating to the specific dispute in the workers' compensation case from which the alleged bad faith conduct arose.

¶18     Our most recent discussion of when a bad faith claim arising out of the handling of a workers' compensation claim accrues occurred in Brewington, which followed a prior appeal of the underlying workers' compensation claim in Brewington v. Birkenbuel, Inc. (1986), 222 Mont. 505, 723 P.2d 938 (Brewington I). In Brewington, we set forth the pertinent facts from Brewington I as follows. In 1974, the claimant suffered a work-related injury for which the insurer began paying temporary total disability benefits. Subsequently, when the claimant refused rehabilitation, the insurer changed the benefits to permanent

8

partial disability. The claimant challenged the change in status and the WCC determined he was permanently partially disabled. The claimant appealed, and we concluded the claimant's disability was permanent and total. We further concluded that the insurer had acted unreasonably in reducing the claimant's benefits. Brewington, ¶¶ 6-7.

¶19 In 1998, the claimant filed an action in district court alleging that, following our decision in Brewington I, the WCC had ordered the insurer to pay the claimant's attorney's fees resulting from the appeal and the insurer had refused to do so until February of 1996. The complaint alleged that this conduct constituted common law bad faith. The complaint also alleged that the insurer's prior unreasonable action in reducing his benefits constituted common law bad faith. Brewington, ¶ 8. The insurer moved to dismiss the complaint, asserting that the tort of common law bad faith had been preempted by the enactment of the MUTPA and any claim brought pursuant to the MUTPA was barred by the § 33-18-242(7)(b), MCA, statute of limitations. The district court agreed and granted the motion to dismiss. Brewington, ¶ 10.

¶20 On appeal, we first concluded that the MUTPA does not prohibit a party from asserting a common law claim for bad faith and the applicable statute of limitations for such a claim is three years. Brewington, ¶¶ 14 and 24. We then determined that the claimant had alleged two separate and independent common law bad faith claims and the statute of limitations commenced on a different date for each. Brewington, ¶ 28. The first bad faith claim was based on the insurer's wrongful reduction of benefits. With regard to that claim, we concluded the elements of the claim existed–and the cause of action accrued–in 1987

9

when the WCC entered judgment restoring the claimant's total disability benefits. Consequently, that claim was barred pursuant to the statute of limitations three years later in 1990. Brewington, ¶ 29.

¶21 The second independent bad faith claim was based on the insurer's continued refusal to pay the ordered attorney's fees. We concluded that claim accrued in February of 1996, when the insurer began to make the payments. Thus, the claimant's bad faith claim based on that conduct, filed less than three years later in 1998, was timely and the district court erred in dismissing that portion of the complaint. Brewington, ¶¶ 30-31.

¶22 As in Grenz and Poteat, it is clear that we reached our decision regarding the date of accrual of a bad faith cause of action in Brewington by examining the particular dispute at issue in the underlying workers' compensation case which gave rise to the allegations of bad faith conduct, and determining when that dispute was resolved. In other words, we determine the accrual date of a bad faith claim arising out of a separate and independent disputed issue by determining whether that particular issue has been ultimately resolved, regardless of the existence or absence of a resolution of other issues within the workers' compensation case.

¶23 O'Connor urges that an affirmative answer to the certified question before us will produce the very problems for insurers about which we expressed concerns in Fode v. Farmers Ins. Exchange (1986), 221 Mont. 282, 719 P.2d 414, and might "promote chaos in court dockets and do violence to judicial economy." In the referenced case, Fode was involved in a three-vehicle accident and Farmers Insurance Exchange (Farmers) insured one

10

of the other drivers. Fode requested Farmers to pay for the property damage he incurred in the accident, but Farmers denied liability and refused to pay the claim. Fode brought a bad faith action against Farmers for allegedly refusing to settle the claim when its liability was reasonably clear. The district court subsequently granted summary judgment to Farmers and Fode appealed. At the time Fode appealed, the degrees of liability for each party involved in the accident had not been determined. Fode, 221 Mont. at 284, 719 P.2d at 415.

¶24    On appeal, we vacated the summary judgment entered by the district court and remanded for further proceedings. Fode, 221 Mont. at 286, 719 P.2d at 416. We observed that, as allowed under then-existing law, the bad faith case was being pursued even though liability for the accident had not been determined. We also observed that, under then-current procedures,

> [t]he insurance company is put in a difficult position by having to defend a bad faith case before the underlying case has been determined. Discovery of the insurer's file in a bad faith case raises difficult "work product" and "attorney-client" problems affecting the underlying case. The practice also allows for undue leverage to be exerted by forcing the insurer to face the prospect of two lawsuits with the additional costs incurred for defense.

Fode, 221 Mont. at 287, 719 P.2d at 417. For those and other reasons, we held that

> all proceedings in a bad faith case, alleging violations of the code which require a showing that liability be reasonably clear, are suspended until the liability issues of the underlying case have been determined either by settlement or judgment.

Fode, 221 Mont. at 287, 719 P.2d at 417. Fode has nothing to advance O'Connor's position here.

¶25    First, Fode is readily distinguishable by the mere fact that it was not a workers'

11

compensation case and the law and procedures at issue–and of concern–there have since changed. In addition, our holding related solely to existing law and procedures. Finally, while O'Connor's concerns about insurers, court dockets and judicial economy are appreciated, they are of limited relevance in light of Grenz, Poteat, and Brewington.

¶26    O'Connor also relies on three other non-workers' compensation cases–Ridley v. Guaranty Nat. Ins. Co. (1997), 286 Mont. 325, 951 P.2d 987; Safeco v. Montana Eighth Jud. Dist., 2000 MT 153, 300 Mont. 123, 2 P.3d 834; and DuBray v. Farmers Ins. Exchange, 2001 MT 251, 307 Mont. 134, 36 P.3d 897–in support of her argument here. Although O'Connor concedes in her brief that none of these three cases involves third-party bad faith claims against an insurer and, therefore, do not address the issue of when such a claim accrues, she asserts that they support her argument by analogy. As discussed above, however, Grenz, Poteat and Brewington do address the issue before us and do so within the context of workers' compensation cases. Therefore, we need not address Ridley, Safeco and DuBray here.

¶27    Based on the above discussion, we restate and answer the reformulated certified question as follows:

¶28    For statute of limitations purposes, do statutory and common law bad faith claims against an insurer, predicated on actions taken in the adjustment of a workers' compensation claim, accrue when the Montana Workers' Compensation Court enters a judgment ordering the insurer to pay for a previously denied benefit, but leaves unresolved the ultimate determinations of the extent and duration of the worker's disability? Yes.

12

/S/ KARLA M. GRAY

We concur:

/S/ JOHN WARNER
/S/ JIM RICE

Justice James C. Nelson concurs.

¶29    I concur in the Court's Opinion.  I write separately to express an additional rationale.

¶30    As noted in the Court's Opinion, the first and most obvious problem in this and similar cases is that the Montana Unfair Trade Practices Act (MUTPA) does not define "underlying claim."  While that failure might not pose a problem in non-workers' compensation cases, it does where workers' compensation claims are involved because of the various determinations that can be made as the worker's case proceeds through the workers compensation system.  Of necessity, the injured worker can, and often does, seek relief from the system at various times as her injury heals or regresses and as her disability status changes.  Her "underlying claim" is always to obtain the statutory benefits to which she is entitled at that time, whether the case will be disposed of finally at that point or not.

¶31    As to the definition of common law bad faith "claims" the statute is no more helpful.  Title 27, Chapter 2 of the Montana Code Annotated, does not define the word "claim" either.  Title 27, Chapter 2, dealing with statutes of limitation, primarily is written in terms of "actions" or "causes of action" (although § 27-2-102, MCA, seems to include "claims" as an interchangeable substitute.)

¶32    Notwithstanding, a claim and an action are not precisely the same.  *Black's Law Dictionary* defines an action as "[a] civil or criminal judicial proceeding;" a "suit."  *Black's Law Dictionary* 28-29 (7th ed. 1999).  A claim, on the other hand, is defined in terms of "rights."  "The aggregate of operative facts giving rise to a right enforceable by a court." *Black's Law Dictionary* 240 (7th ed. 1999).

14

¶33    The Workers' Compensation Act is written using the term "claim." *See generally,* Title 39, Ch. 71, MCA. Hence, a common law bad faith "claim" is properly described--at least for workers' compensation purposes--as the "aggregate of operative facts giving rise to a right [benefit] enforceable by [the Workers' Compensation] court."

¶34    Accordingly, as to workers' compensation cases, it seems to me that, absent any statutory definition of "underlying claim" or "claim" the more appropriate interpretation of these words is the final judgment on the particular operative facts giving rise to the dispute over the particular benefit at issue--as opposed to the final disposition of the action or cause of action that brought the injured worker before the court in the first instance.

¶35    In that respect, I respectfully disagree with the Dissent's interpretation of *Poteat v. St. Paul Mercury Ins. Co.* (1996), 277 Mont. 117, 918 P.2d 677, and *Brewington v. Employers Fire Ins. Co.*, 1999 MT 312, 297 Mont. 243, 992 P.2d 237.

¶36    In my view, underpinning *Poteat* and *Brewington* is the acknowledgment that different claims arise during the progress of an injured worker's case through the system. Some claims are settled or are otherwise finally resolved. Other claims are left open or are reserved for later disposition. An MUTPA action can be filed in connection with the former; such an action cannot be filed with respect to the latter until there is a final judgment. *Poteat*, 277 Mont. at 120-21, 918 P.2d at 679-80.

¶37 The same is true of common law bad faith actions. The cause of action accrues when all the elements of the claim exist or have occurred. Where there are separate and independent torts, the cause of action accrues when all the elements of that tort exist or have occurred. Thus, the common law bad faith statute of limitations as to each cause of action may commence on different dates depending upon when the underlying judgment was entered as to the particular tort at issue. *Brewington*, ¶¶ 26-30.

¶38 The Dissent's concerns that our decision will promote a multiplicity of law suits and serial litigation may well be true. On the other hand, the Court's Opinion--which I believe is grounded in existing precedent--allows the injured worker to appeal any final judgment of the Workers' Compensation Court as to a disputed claim whether the entire cause of action is finally disposed of or not. Thus, the injured worker is entitled to a speedy resolution of that claim. And, if the worker prevails, she will enjoy the relief and benefits to which she is then statutorily entitled without having to wait until the entire case is resolved--which in some cases may take years.

¶39 For these additional reasons, I concur.


/S/ JAMES C. NELSON

16

Justice Patricia O. Cotter dissenting.

¶40    I respectfully dissent from the Court's resolution of the certified questions.

¶41    I agree that some sort of "bright line" must be drawn so as to alert claimants of the date upon which their statute of limitations begins to run on claims for bad faith against an insurer. I further agree that workers' compensation cases differ from conventional tort matters in that, in workers' compensation cases, there can potentially be multiple judgments or settlements entered. In spite of that fact, or perhaps because of it, I would conclude, as O'Connor urges, that the bright line should be the point in the disposition of the overall compensation claim where liability and the extent and duration of disability have been resolved by judgment or settlement, and not before.

¶42    I do not agree with the Court's conclusion that such a point of demarcation would be inconsistent with our holdings in *Brewington* and *Poteat*. In *Brewington II*, we were asked to resolve when the statute of limitations ran on two separate claims brought by Brewington against his insurer: the first arising out of the insurer's wrongful reduction of benefits, which had accrued in 1987 when the WCC restored his total disability benefits following our resolution of *Brewington I*, and the second based on the ongoing refusal of the insurer to pay his court-ordered attorney fees. We noted that in *Brewington I,* decided twelve years earlier, there had been a determination that Brewington's disability was permanent and total, and that Brewington was entitled to a twenty percent statutory penalty. We determined in *Brewington II* that the statute of limitations in the reduction of benefits matter had commenced to run in 1987 and that this claim was therefore barred. *Brewington II,* ¶ 29. However, we held that

17

the claim for fees did not accrue until 1996, and that his claim as to that issue was timely. *Brewington II*, ¶¶ 30-31.

¶43     Clearly, the issues of liability and the nature and extent of disability were resolved by this Court in *Brewington I.* It therefore made perfect sense for us to conclude in *Brewington II* that the statute of limitations for Brewington's bad faith claims arising out of the insurer's handling of those issues began to run once the WCC restored his benefits following our *Brewington I* decision.

¶44     It is important to note that the Court was silent in *Brewington II* as to whether it considered resolution of all liability and disability claims in *Brewington I* dispositive with respect to the running of the statute of limitations, or whether it determined that resolution of one "dispute" was the triggering event. Thus, there is as much support in *Brewington II* for the dissent's approach as there is for the majority's. I therefore disagree with this Court's characterization of our decision in *Brewington II* as one made on the basis of the resolution of one "dispute" or another by the WCC.

¶45     The argument for O'Connor's position finds strong support in *Poteat,* however. In *Poteat,* we noted that, one year prior to the filing of the bad faith litigation, there had been a full and final compromise settlement agreement entered between the parties, which encompassed everything except future medical benefits. We therefore concluded that the District Court had subject matter jurisdiction over those bad faith claims arising before the settlement, but that the claims as to the denial of future medical benefits were not yet ripe. We said at 277 Mont. 120-121:

18

> Poteat's underlying worker's compensation claims for compensation and *past* medical benefits have been fully settled. Those counts of her suit which encompass unfair trade practices committed *before* settlement have their basis in a valid existing settlement agreement. **Since an underlying settlement is in place as mandated by § 33-18-242(6)(b), MCA, Poteat may legitimately pursue a UTPA claim in the District Court regarding pre-settlement unfair trade practices**. [Emphasis added.]

It is thus clear that in *Poteat*, we found the existence of the type of full and final settlement contemplated by § 33-18-242(6)(b), MCA, to be of pivotal importance in determining whether a bad faith challenge was timely. We did not, as the Court finds at ¶ 17, simply reach our decision on the basis that a specific "dispute" within the case had been resolved by settlement or judgment.

¶46 I make the foregoing arguments to demonstrate that neither *Brewington II* or *Poteat* provide a solid underpinning for the Court's resolution of the issues before us. If anything, a comprehensive review of these cases supports O'Connor's argument rather than that of National Union and Alexsis. Choosing which interpretation is correct is, I believe, more than just an academic exercise.

¶47 The Court concludes at ¶ 25 that the concerns we voiced in *Fode* about the chaos which could result from piecemeal bad faith litigation, as well as the concerns over judicial economy, are "of limited relevance . . . ." I disagree. In my judgment, our decision completely ignores the practicalities of both workers' compensation and bad faith litigation.

¶48 By virtue of our decision today, claimants will be required to file a cause of action covering any perceived act of bad faith that occurred prior to the entry of each interim judgment. Because bad faith over the life of a case--be it real or perceived--is generally a

19

*course of conduct* rather than a set of discrete incidents, there will be an overlap of the bad faith that occurred before, during the course of, and following each interim judgment. Under our decision, the insurer's course of conduct will have to be broken into artificial subsets for each successive bad faith lawsuit. And in each case, the court will have to figure out what portion of the claims' file of the insurer should be produced in discovery, the insurer arguing for protection of any reference in the file to unresolved issues, and the claimant arguing that the disclosure is incomplete and therefore inadequate to support the claim.

¶49    In *Fode*, we expressed the following concerns about premature bad faith litigation, borne, we said, from "experience in the field":

> The insurance company is put in a difficult position by having to defend a bad faith case before the underlying case has been determined. Discovery of the insurer's file in a bad faith case raises difficult "work product" and "attorney-client" problems affecting the underlying case. The practice also allows for undue leverage to be exerted by forcing the insurer to face the prospect of two lawsuits with the additional costs incurred for defense.

*Fode*, 221 Mont. at 287. Obviously, it will not be only the insurer that will experience the practical problems our decision will generate. Both parties to a bad faith cause of action will face a potential multiplication of costs and lawsuits, and associated discovery problems. And the courts will be faced with the prospect of multiple claims arising out of one workers' compensation case.

¶50    There is irony in the parties' respective positions. The insurer has encouraged--and won--a decision calling for early and serial bad faith litigation, while the claimant has urged a delayed resolution of such claims until the core issues of the case--liability and extent and

20

duration of disability--have been resolved by settlement or judgment.   For there to be a "bright line" visible to all, it is important that we choose one course or the other.  I would conclude that precedent, reason, and practicality dictate the latter resolution.  I therefore dissent from our Opinion.

/S/ PATRICIA O. COTTER

Justice W. William Leaphart joins in the dissent of Justice Patricia O. Cotter.

/S/ W. WILLIAM LEAPHART

Justice Jim Regnier joins in the dissent of Justice Patricia O. Cotter.

/S/ JIM REGNIER